**In re Michael Emil WALD and Suzanne S. Wald, Debtors.**

**Robert A. ANGUS and and Kathleen Angus, Plaintiffs,**

v.

**Michael Emil WALD, Defendant.**

**Bankruptcy No. 95–00408–BGC–7. Adversary No. 95–00202.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

March 26, 1997.

Jay Clark, Birmingham, AL, for plaintiffs.

Charles Cleveland, Birmingham, AL, for defendant.

### MEMORANDUM OPINION ON RENEWED MOTION FOR SUMMARY JUDGMENT

BENJAMIN COHEN, Bankruptcy Judge.

The Collateral Estoppel Effect of State Court Default Judgments in Bankruptcy Dischargeability Proceedings

*Summary of Holding*

To determine whether a state court default judgment should be given collateral estoppel

effect in a bankruptcy dischargeability proceeding, a bankruptcy court should consider and apply federal law rather than the collateral estoppel law of the state in which the judgment was entered. In the instant case, the default judgment entered against this debtor by the state court should not be given collateral estoppel effect in the dischargeability proceeding pending before this Court.

## I. Introduction

On April 6, 1994, the state Circuit Court for Jefferson County, Alabama entered a default judgment against the debtor and in favor of the plaintiffs for $49,009.77. On January 20, 1995, the debtor filed the pending Chapter 7 bankruptcy case seeking, in part, a discharge of that debt. On May 3, 1995 the plaintiffs filed the pending adversary proceeding to determine the dischargeability of the debt.

The plaintiffs contend before this Court that the debt underlying the state court default judgment was the result of either fraud by the debtor or was the result of willful and malicious injury caused by the debtor, and conclude that the state court default judgment collaterally estops the debtor from litigating the dischargeability questions before this Court. The consequence, according to the plaintiffs, is that the debt is, as a matter of law, nondischargeable. In support of their contentions, the plaintiffs argue that the debtor's "participation" in the state court case qualifies the default judgment for actually litigated status for purposes of the Eleventh Circuit Court of Appeals case of *Bush v. Balfour Beatty Bahamas, Ltd.* (*In re Bush*), 62 F.3d 1319 (11th Cir.(Fla.) 1995) where the court allowed collateral estoppel effect to be afforded a default judgment because of a defendant's extensive participation prior to the entry of default. In contrast, the debtor maintains that the state court default judgment has no effect in the pending proceeding and that if the plaintiffs seek to prevent the discharge of the debt, they must, at a minimum, establish the facts underlying their claims.

This matter is before the Court on the plaintiffs' *Renewed Motion for Summary Judgment.*[1] After notice, a hearing on the motion was held on July 29, 1996. Jay Clark, the attorney for the plaintiffs, and Charles Cleveland, the attorney for Michael Emil Wald, one of the debtors and the only defendant in this proceeding, appeared.[2]

## II. Findings of Fact

Mr. and Mrs. Angus, the plaintiffs, hired Mr. Wald, who was a general contractor, to build a house for them. During the process of construction, a dispute arose and the plaintiffs fired Mr. Wald. The plaintiffs completed the construction themselves and on November 15, 1993 filed an action against the debtor in the Circuit Court of Jefferson County, Alabama. The complaint in that suit, Civil Action No. CV 93–008885–00, contained three counts. The first alleged that the debtor breached his contract with the plaintiffs by failing to "timely" complete the house; by failing to obtain and keep insurance on the premises during the period of construction; and, by failing to pay for labor and materials used in the construction. The second count alleged that subsequent to entering into the contract, the debtor, either fraudulently or mistakenly, misrepresented the date on which the house would be completed. The third count alleged that the debtor obtained draws against the plaintiffs' construction line of credit by misrepresenting, either fraudulently or mistakenly, that the money withdrawn would be used to pay for costs already incurred by him in constructing the plaintiffs' house.[3]

---

1. The plaintiff previously filed a *Motion for Summary Judgment* on September 7, 1995. That motion was denied by order of this Court entered on September 29, 1995. The present *Renewed Motion for Summary Judgment* contains the same contentions, factual allegations, and legal arguments as the previous motion and is supported by the same documents and affidavits. Nothing new has been added. In ruling on the present motion, the Court adopts its memorandum opinion and order denying the previous motion.

2. After filing the present motion, counsel for the plaintiffs indicated that the plaintiffs would most likely, if summary judgment was denied, appeal this Order rather than proceed with a trial on the merits before this Court.

3. The Court has before it for consideration as evidence, documents from the state court case. Those include: the complaint, application for entry of default, affidavit filed by the plaintiffs, the answer filed by the debtor, the state court

On December 29, 1993 the plaintiffs filed an application with the state court for an entry of default because the debtor had not answered the complaint. On January 5, 1994, a stamped form judgment granting the application was entered on the state court docket sheet. That entry provided that judgment by default was rendered in favor of the plaintiffs and against the defendant with leave to the plaintiffs to prove damages within 30 days.[4]

On January 19, 1994, the debtor filed an answer to the plaintiffs' complaint which stated, in its entirety: "I deny all of the charges you have made against Weld Construction and Mike Wald. At this time I am unable to afford legal representation, but I'm trying to earn enough money to defend myself against those charges." Answer filed January 19, 1994 in Civil Action No. CV 93–08885–00, Circuit Civil Court of Jefferson County, Alabama. The debtor was not represented by an attorney when he filed his answer or at any other time during the course of the state court case.

The next entry on the state court's docket sheet was handwritten and dated January 31, 1994. It read, "Case came on for hearing to prove damages. Deft. appeared pro se and indicated he was contemplating bankruptcy, but he believed he had in part a meritorious defense. This hearing is continued to March 2, 1994 at 8:45 A.M."

The next entry, dated March 2, 1994, was also handwritten and read, "Default judgment is made final. Plaintiff granted 30 days to prove damages."

On March 17, 1994, the plaintiffs filed an affidavit for the purpose of proving damages. In their affidavit, the plaintiffs described and requested compensatory damages in the amount of $37,009.77, including $10,000 for "emotional distress," and punitive damages of "$12,000 to $15,000." Affidavit filed March 17, 1994 in Civil Action No. CV 93–08885–00, Circuit Civil Court of Jefferson County, Alabama.

On April 6, 1994, another form judgment notation was stamped on the state court's case docket sheet. That entry stated, without elaboration or further detail, that judgment was granted in favor of the plaintiffs and against the defendant in the sum of $49,009.77.[5]

The debtor filed his Chapter 7 bankruptcy petition on January 20, 1995. The plaintiffs filed this adversary proceeding, contending that the debt underlying the state court judgment was the result of fraud and is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The plaintiffs also contend that the debt is nondischargeable under 11 U.S.C. § 523(a)(6) as a willful and malicious injury. The plaintiffs argue before this Court that the state court judgment collaterally estops the debtor from litigating the dischargeability of the debt and that they are, therefore, entitled to a judgment of nondischargeability as a matter of law.

### III. Conclusions of Law

#### A. Applicable Tests

Most courts apply one of two tests to determine whether a bankruptcy court should give collateral estoppel effect to a state court default judgment. These are *The*

---

docket sheet, and the state court certificate of judgment.

4. In its entirety, the judgment notation reads:
 Upon motion of the plaintiff, supported by affidavit, judgment by default is rendered in favor of plaintiff and against the *defendant(s) Wald Construction Co., Inc. and Michael Wald* with leave to prove damages. within *30 days.* Judgment notation dated January 5, 1994 in Civil Action No. CV 93–008885–00, in the Circuit Civil Court of Jefferson County, Alabama (handwritten portions underlined). A facsimile of the state court judge's signature is a part of the form stamped judgment.

5. The second judgment notation reads as follows:

Upon motion of the plaintiff, supported by affidavit, judgment by default is rendered in favor of plaintiff and against the defendants *Wald Construction Company, Inc. and Michael Wald* and damages are fixed and assessed in the amount of *forty nine thousand nine and 77/100* Dollars ($ *49009.77* ) and all costs with/without waiver as to personal exemptions. Judgment notation dated April 6, 1994 in Civil Action No. CV 93–008885–00, in the Circuit Civil Court of Jefferson County, Alabama (handwritten portions underlined). A facsimile of the state court judge's signature is a part of the form stamped judgment.

**520**

*General Federal Rule* and *The State Law Test.*

### 1. The General Federal Rule

■ The majority of courts follow the General Federal Rule, which requires that *the issues sought to be precluded must have been actually litigated in the prior proceeding* before collateral estoppel is applied. In a bankruptcy dischargeability context, a default judgment is therefore not generally accorded collateral estoppel effect because issues are not ordinarily, actually litigated to obtain a default judgment. In reality, the opposite is true. "Ordinarily a default judgment will not support the application of collateral estoppel because '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.' " *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319 (11th Cir. (Fla.) 1995)(quoting Restatement (Second) of Judgments § 27 cmt. e (1982)). In dischargeability proceedings bankruptcy courts may apply this general federal rule of issue preclusion to state court default judgments pursuant to the United States Supreme Court decision of *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

In contrast, a number of courts have held that the decision of the Supreme Court of the United States in *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) allows bankruptcy courts, in dischargeability proceedings, to utilize state principles of collateral estoppel to determine the issue preclusive effect of a judgment rendered by that state, even if those principles would prevent a trial in the bankruptcy court of issues not actually litigated in the state court. An application of *Marrese* would require a court to consider first, whether a plaintiff's state court default judgment, under state collateral estoppel law, would preclude a determination of the dischargeability questions in a bankruptcy court. If it does, the full faith credit statute of 28 U.S.C. § 1738 would require recognition of that result, and the bankruptcy court would then be required to consider second, whether there is an exception to the full faith and credit statute for the narrow question of the applicability of state court default judgments in bankruptcy dischargeability proceedings as some courts have recognized in *Brown v. Felsen.*

For purposes of the instant case, this Court finds that in determining the collateral estoppel effect of a state court judgment, the decision in *Brown v. Felsen* requires bankruptcy courts to apply federal law to determine the issue preclusive effect of a state court judgment. In *Brown v. Felsen* the Supreme Court established an exception to the full faith and credit statute. This exception, while serving as one basis for the general federal rule, precludes the application of collateral estoppel to default judgments in bankruptcy dischargeability proceedings, except in limited situations where extensive participation or opprobrious conduct by a debtor in a prebankruptcy state court action may justify deviation from the general rule of non-preclusion.

### (a) *Brown v. Felsen* precludes the application of res judicata in bankruptcy dischargeability proceedings

■ In *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the debtor, in settlement of a state-court collection suit, stipulated that a judgment should be taken against him. After the state court entered the judgment, the debtor filed for bankruptcy. In the bankruptcy court, the creditor sought to establish that the debt was not dischargeable under then Bankruptcy Act Sections 17a(2) and 17a(4), because, as the creditor contended, the debt was the result of the debtor's fraud, deceit, and malicious conversion. The debtor argued that since the prior state court proceeding did not result in a finding of fraud, res judicata barred relitigation of the nature of the obligation owed by him to the creditor. The bankruptcy court agreed with the debtor and, in deciding the matter, confined its consideration to the judgment, pleadings, exhibits, and stipulations from the state-court record. The bankruptcy court refused to hear other evidence offered by the creditor and concluded that, because neither the judgment nor the parties' stipulation, nor any other portion of the state court record, showed that the debtor's fraud or misrepresentation formed the basis for the state court judgment, the debt under-

lying the judgment had not been proved to be nondischargeable. The district court and the appeals court affirmed the decision of the bankruptcy court.

The Supreme Court reversed the appeals court and held that res judicata had no preclusive effect on dischargeability issues in bankruptcy proceedings. In reaching this decision, the Court relied primarily on the intent of Congress embodied in the 1970 dischargeability amendments to the Bankruptcy Act. In so doing, the Court sought to thwart the use of res judicata to perpetrate the evils which that legislation was designed to deter. Justice Harry A. Blackmun's delineation of the basis of the court's decision requires thorough examination as it is poignantly relevant to the issues in the instant case. Justice Blackmun wrote:

> Before 1970, such res judicata claims were seldom heard in federal court. Traditionally, the bankruptcy court determined whether the debtor merited a discharge under § 14, but left the dischargeability under § 17 of a particular debt to the court in which the creditor sued, after bankruptcy, to enforce his prior judgment. Typically, that court was a state court. In 1970, however, Congress altered § 17 to require creditors to apply to the bankruptcy court for adjudication of certain dischargeability questions, including those arising under §§ 17a(2) and 17a(4).

> . . . . .

> Respondent contends that the § 17 questions raised here, or similar issues of state law, could have been considered in the prior state-court proceeding and therefore are not "new." Respondent argues that the state-court collection suit is the appropriate forum for resolving all debtor-creditor disputes, including those concerning dischargeability. While in some circumstances the consolidation of proceedings may be desirable, here consolidation would undercut a statutory policy in favor of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them.

> 1. Considerations material to discharge are irrelevant to the ordinary collection proceeding. The creditor sues on the instrument which created the debt. Even if an issue similar to those created by § 17 should arise, the state-law concept is likely to differ from that adopted in the federal statute. For example, in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the Court held that a mere technical conversion by a bankrupt dealer in automobiles was not "willful and malicious" within the meaning of § 17 by virtue of being actionable under state law, nor was a misappropriation of funds, held pursuant to a "trust receipt," a breach of an express trust sufficient to constitute an act done "as an officer or in any fiduciary capacity."

> When § 17 issues are not identical to those arising under state law, the parties have little incentive to litigate them. In the collection suit, the debtor's bankruptcy is still hypothetical. The rule proposed by respondent would force an otherwise unwilling party to try § 17 questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future. In many cases, such litigation would prove, in the end, to have been entirely unnecessary, and it is not surprising that at least one state court has expressly refused to embroil itself in an advisory adjudication of this kind. And absent trial on the merits, there is no particular reason to favor extraneous facts thrown into a record for § 17 purposes over facts adduced before the bankruptcy court.

> 2. If a state court should expressly rule on § 17 questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court. The 1970 amendments eliminated postbankruptcy state-court collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their assets. Congress' primary purpose was to stop that

abuse. A secondary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them. By the express terms of the Constitution, bankruptcy law is federal law, U.S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive." While Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts.

Respondent argues that petitioner could have avoided such a result and preserved his dischargeability contentions for bankruptcy court review by bargaining for a stipulation that § 17 issues were not resolved by the consent judgment. It makes little sense, however, to resolve a federal dischargeability question according to whether or not the parties in state court waived their right to engage in hypothetical litigation in an inappropriate forum.

3. Respondent also contends that petitioner had an adequate incentive to prove state-law fraud, which might have entailed proof identical to that required by § 17. Petitioner, however, rejected whatever lure exemplary damages and body execution may have provided. That rejection does not conclusively show that petitioner thought respondent was innocent of fraud. Petitioner may have thought those remedies would not be advantageous to him. While respondent is certainly entitled to claim that res judicata would bar further pursuit of those extraordinary remedies in state court, their hypothetical desirability provides no basis for preventing petitioner from recovering on the debt, the remedy he elected from the beginning.

Refusing to apply res judicata here would permit the bankruptcy court to make an accurate determination whether respondent in fact committed the deceit, fraud, and malicious conversion which petitioner alleges. These questions are now, for the first time, squarely in issue. They are the type of question Congress intended that the bankruptcy court would resolve. That court can weigh all the evidence, and it can also take into account whether or not petitioner's failure to press these allegations at an earlier time betrays a weakness in his case on the merits.

Some indication that Congress intended the fullest possible inquiry arises from the history of § 17. In the 1898 Bankruptcy Act, Congress provided that only "judgments" sounding in fraud would be excepted from a bankrupt's discharge. 30 Stat. 550. In 1903, Congress substituted "liabilities" for "judgments." 32 Stat. 798. The amendment, said the accompanying House Report, was "in the interest of justice and honest dealing and honest conduct," and it was intended "to exclude beyond peradventure certain liabilities growing out of offenses against good morals." This broad language suggests that all debts arising out of conduct specified in § 17 should be excepted from discharge and the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt.

In sum, we reject respondent's contention that res judicata applies here and we hold that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt. Adopting the rule respondent urges would take § 17 issues out of bankruptcy courts well suited to adjudicate them, and force those issues onto state courts concerned with other matters, all for the sake of a repose the bankrupt has long since abandoned. This we decline to do.

442 U.S. at 129, 134–139, 99 S.Ct. at 2208, 2211–13 (citations and footnotes omitted).

Application of res judicata to resolve dischargeability issues would resurrect the very problems that the dischargeability amend-

ments of 1970 were designed to address. Those problems would include:

1. According res judicata effect to state court judgments in bankruptcy dischargeability proceedings would undercut Congress' intention to commit dischargeability issues to the jurisdiction of the bankruptcy court.

2. According res judicata effect to state court judgments in bankruptcy dischargeability proceedings would force state courts to decide dischargeability questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them.

3. According res judicata effect to state court judgments in bankruptcy dischargeability proceedings would force otherwise unwilling creditors to try dischargeability questions to the extreme in order to protect themselves against the mere possibility that a debtor might file bankruptcy in the future.

4. According res judicata effect to state court judgments in bankruptcy dischargeability proceedings would favor inclusion of extraneous facts for dischargeability purposes into a state court record over facts actually adduced before the bankruptcy court.

5. According res judicata effect to state court judgments in bankruptcy dischargeability proceedings would allow creditors to take advantage of impecunious debtors who are unable to retain counsel to defend them in state court lawsuits. "While Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts." *Brown,* 442 U.S. at 136, 99 S.Ct. at 2211.[6]

6. According res judicata effect to state court judgments in bankruptcy dischargeability proceedings would force state courts that seldom consider federal bankruptcy laws to resolve dischargeability issues rather than allowing bankruptcy courts that have developed such expertise to resolve those issues.

7. According res judicata effect to state court judgments in bankruptcy dischargeability proceedings would preclude an actual trial on the merits of dischargeability issues, so that the bankruptcy court will be unable to make an accurate determination whether a debtor in fact committed deceit, fraud, or malicious injury, or whatever other opprobrious conduct which may form the basis of a creditor's dischargeability complaint. "[C]ongress intended the fullest possible inquiry...." *Id.* at 138, 99 S.Ct. at 2212.

The decision in *Brown* involved a state court judgment. However, in determining the preclusive effect of that judgment on a dischargeability proceeding in bankruptcy court, the Court did not look to state law, but

---

6. The "philosophy" referred to by Justice Blackmun is explained in the "Purposes and Statement" portion of the House Report which accompanied 1970 dischargeability amendments (P.L. 91–467):

The major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditor. Under present law creditors are permitted to bring suit in state courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge. Often the debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was not properly served. As a result a default judgment is taken against him and his wages or property may again be subjected to garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived. S. 4247 is meant to correct this abuse. Under it, the matter of dischargeability of the type of debts commonly giving rise to the problem; that is, those allegedly incurred as a result of loans based upon false financial statements will be within the exclusive jurisdiction of the bankruptcy court. The creditor asserting nondischargeability will have to file a timely application in the absence of which the debt will be deemed discharged.

. . . . .

The actual focus of the bill is to give greater effect to the discharge for those who need it most, that is, the ordinary wage earner.
H.R.Rep. No. 1502, 91st Cong., 2nd Sess.1970, reprinted in 1970 U.S.C.C.A.N. 4156.

instead formulated a federal rule of decision, based on the premise that "bankruptcy law is federal law," specifically made so by the United States Constitution, and by virtue of the 1970 dischargeability amendments which were later incorporated into the Bankruptcy Code, jurisdiction over the determination of matters relating to dischargeability lies exclusively within the province of the federal court.

**(b) The principles of *Brown v. Felsen* preclude the application of collateral estoppel to pre-bankruptcy default judgments in bankruptcy dischargeability proceedings**

 No Supreme Court decision has questioned the continuing viability of *Brown*.[7] The principles expressed there are still applicable and mandate that no collateral estoppel effect be accorded the state court simple default judgment involved in this case.[8] Of course, if the default is not a "simple" default the outcome could be different (see the discussion below concerning the debtor's participation in the state court case) but as between two parties involved in a previous action, the concept that a simple default judgment collaterally estops those parties from subsequently litigating an action involving the same two parties and issues framed within the complaint filed by the plaintiff in the previous action, is, practically speaking, synonymous with the concept that res judicata precludes those parties in a subsequent action from relitigating matters necessarily involved in the previous case. In a literal sense, nothing has been *actually* litigated in either situation. Consequently, application of collateral estoppel to avoid the actual litigation of dischargeability issues is equally abhorrent to the will of Congress, that being that dischargeability issues should be subjected to the "fullest possible inquiry," as is application of res judicata for the same result.[9] The problems Justice Blackmun associated with res judicata would be equally present in an application of collateral estoppel. These would include:

1. According collateral estoppel effect to state court default judgments in bankruptcy dischargeability proceedings would undercut Congress' intention to commit dischargeability issues to the jurisdiction of the bankruptcy court.

2. According collateral estoppel effect to state court default judgments in bankruptcy dischargeability proceedings would force state courts to decide dischargeability questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them.

3. According collateral estoppel effect to state court default judgments in bankruptcy dischargeability proceedings would force otherwise unwilling creditors to try dischargeability questions to the extreme in order to protect themselves against the mere possibility that a debtor might file bankruptcy in the future.

4. According collateral estoppel effect to state court default judgments in bankruptcy dischargeability proceedings would favor inclusion of extraneous facts for dis-

---

7. In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) the Supreme Court held that collateral estoppel applies in bankruptcy dischargeability proceedings and that the proper standard of proof in bankruptcy dischargeability proceedings is preponderance-of-the-evidence rather than clear-and-convincing evidence. The purpose of the Court's opinion was to insure that a nonbankruptcy judgment could not be denied collateral estoppel effect simply because it was based on factual determinations made under the ordinary preponderance-of-the-evidence standard. "In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the court did not intend to abrogate *Brown v. Felsen*. It merely held that the standard of proof in a discharge case (and by analogy, a dischargeability case) is the preponderance of the evidence, so that fully adjudicated state

court findings could not be disregarded as being subject to a lesser standard." *Stokes v. Vierra (In re Vierra)*, 173 B.R. 417, 418 (Bankr.N.D.Cal. 1994), *rev'd on other grounds, Stokes v. Vierra,* 185 B.R. 341 (N.D.Cal.1995).

8. "Brown can reasonably be interpreted as suggesting that bankruptcy courts should not be forced by state preclusion law to give preclusive effect to state court judgments with respect to dischargeability issues." *Wood v. Dealers Fin. Servs., Inc.,* 199 B.R. 25, 27 (E.D.Mich.1996).

9. "[T]he problems the Supreme Court associated with the use of res judicata are also present when collateral estoppel is asserted." *Tulin v. Recck (In re Recck)*, 167 B.R. 93, 97 (Bankr.N.D.Ohio 1994).

chargeability purposes into a state court record over facts actually adduced before the bankruptcy court.

5. According collateral estoppel effect to state court default judgments in bankruptcy dischargeability proceedings would allow creditors to take advantage of impecunious debtors who are unable to retain counsel to defend them in state court lawsuits.

6. According collateral estoppel effect to state court default judgments in bankruptcy dischargeability proceedings would force state courts that seldom consider federal bankruptcy laws to resolve dischargeability issues rather than allowing bankruptcy courts that have developed such expertise to resolve those issues.

7. According collateral estoppel effect to state court default judgments in bankruptcy dischargeability proceedings would preclude an actual trial on the merits of dischargeability issues, so that the bankruptcy court will be unable to make an accurate determination whether a debtor in fact committed deceit, fraud, or malicious injury, or whatever other opprobrious conduct which may form the basis of a creditor's dischargeability complaint.[10]

The above demonstrates that the tenants of *Brown v. Felsen* are equally applicable when a party seeks to avoid the actual litigation of dischargeability issues in a bankruptcy court by way of collateral estoppel, as they are when a party seeks to accomplish the same result by way of res judicata.[11] In fact, to hold otherwise, that is, to hold that a simple default judgment in state court precludes either party from adducing evidence outside of the state court record to show that the debt underlying the judgment does or does not meet the criteria for dischargeability, will completely eviscerate the effect of *Brown* in any state in which the state rules of decision accord collateral estoppel effect to simple default judgments.[12] Creditors in those states may be inclined to include fraud and conversion counts in every complaint, even those involving simple collection or contract matters, and could with the possibility of avoiding the actual litigation of dischargeability issues in both the state court and the bankruptcy court race to the courthouse to secure default judgments against debtors too impecunious to defend themselves.[13] The prompt resolution of state court lawsuits via capitulation for legitimate reasons other than the guilt of the defaulting party will be inhibited. Debtors will be forced to squander precious resources, necessary in our society for simple survival, to defend against often questionable claims of fraud or willful and malicious injury. Those debtors unable to scrape together sufficient resources to mount a defense will suffer conviction with no tribunal ever having passed on the merits of the claims against them. On the other hand, it is not only the debtor that will be harmed if simple defaults are given collateral estoppel effect. A creditor will not be able file a lawsuit couched in only breach of contract terms. In anticipation of prompt resolution of the suit by default, the creditor will be precluded by the debtor's default from later

---

10. "Since the policy of the Bankruptcy Code is to provide debtors with a fresh start and since one of the important elements of the fresh start is to release debtors from debt in order to become financially rehabilitated, it seems particularly important that this Court be free to investigate circumstances surrounding debtors' liabilities in the bankruptcy context." *Phase I Inc. v. Black (In re Black)*, 18 B.R. 534, 535–536 (Bankr. D.N.M.1982).

11. "The rationale underlying Brown for denying claim preclusion to state court determinations in bankruptcy dischargeability proceedings is equally applicable in denying issue preclusion effect to a state court default judgment." *Nationwide Mut. Fire Ins. Co. v. Hale (In re Hale)*, 155 B.R. 730, 736 (Bankr.S.D.Ohio 1993).

12. "If any default judgment per se can satisfy the 'actually litigated' requirement, then it would appear that every case would meet the 'actually litigated' standard." *Montgomery v. Kurtz (In re Kurtz)*, 170 B.R. 596, 601 (Bankr.E.D.Mich. 1994).

13. " '[C]reditors should not be encouraged to go into state courts prior to bankruptcy seeking default judgments based upon fraud. Such a circumstance would create an injustice greater than that which the 1970 amendments were intended to cure.' " *In re McMillan*, 579 F.2d 289, 293 (3rd Cir.1978)(quoting unpublished opinion of the bankruptcy court appealed from).

contesting the dischargeability of the debt in the bankruptcy court.[14]

Outcomes in states with different collateral estoppel law would produce significant problems. Debtors in states which do not accord collateral estoppel effect to simple default judgments will be relieved from obligations that will be declared nondischargeable in states which accord collateral estoppel effect to simple default judgments. Concerns of fundamental fairness and equality of treatment are violated where one debtor is treated differently than another under the same bankruptcy law. Equal protection concerns, at least morally speaking, are implicated. States have no prerogative to dictate, define or influence the dischargeability of debts by adoption of any particular application of issue preclusion. The dischargeability of debts is not a state concern but is, instead, by virtue of Art. I, § 8, cl. 4 of the U.S. Constitution, a purely federal concern. In fact, the bankruptcy discharge is, by definition, anathema to obligations defined by state law so that reference to state law to modify the definition of dischargeable debts under federal bankruptcy law is an inherent contradiction.

If *Brown* is not applied to prevent bankruptcy courts from according collateral estoppel effect to simple default judgments, uniformity of decision, even among bankruptcy courts in the same state, district, or even division may be impossible.[15] The difficulty of discerning state preclusion law on a subject not ordinarily considered by state courts, as well as honest differences of opinion over

what the issue preclusion law of a state is, as it relates to simple default judgments, will result in disparate treatment of the issue among bankruptcy courts construing the same state law. Often, whether or not a simple default judgment will be ruled nondischargeable will depend solely on the fortuity of where the debtor resides or where a bankruptcy petition is filed, or, which bankruptcy judge is assigned the case within a particular district.

In the states where there have been no clear pronouncements by state appellate courts regarding the collateral estoppel effect of simple default judgments, the bankruptcy courts and district courts of those states will be left to divine separate rules of decision based on secondary authorities, analogy, and conjecture. If a debtor changes residence, the bankruptcy court in the new place of residence will be faced with the arduous and uncertain task of discerning the law of preclusion of the foreign state in which the judgment was rendered; consequently, bankruptcy courts in separate jurisdictions may come to differing conclusions regarding the preclusive effect of a simple default judgment rendered in one particular state.

The above described results are surely not what was intended. This Court must assume that neither Congress nor Justice Blackmun contemplated such problems or intended the dischargeability of a debt to depend on the residence of the debtor or the place where the judgment was rendered.[16]

---

**14.** "Financially strapped defendants should not have to spend scant resources defending fraud allegations when they admit to owing the debt contractually; plaintiffs should not be afraid to accept a stipulated judgment because there is no confession of fraud." *Stokes v. Vierra (In re Vierra)*, 173 B.R. 417 (Bankr.N.D.Cal.1994), *reversed on other grounds*, 185 B.R. 341 (N.D.Cal. 1995).

**15.** This is the predictable and natural result if "bankruptcy courts weighing the preclusive effect of prior state court adjudications, could be compelled to undertake analysis under any of fifty different articulations of the collateral estoppel doctrine." *Federal Trade Comm. v. Wright (In re Wright)*, 187 B.R. 826, 832 (Bankr.D.Conn. 1995).

**16.** The Court of Appeals for the Eleventh Circuit's decision in *St. Laurent, II v. Ambrose (In re*

*St. Laurent, II)*, 991 F.2d 672 (11th Cir.1993) does not conflict with the conclusion that *Brown* overrides the full faith and credit statute when simple default judgments are involved. In *St. Laurent*, the court determined the collateral estoppel effect of a Florida fraud judgment in a bankruptcy dischargeability proceeding utilizing Florida preclusion law. "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." 991 F.2d at 675. The judgment involved in *St. Laurent* was not a default judgment, but was rendered after trial, so that the factual issues involved had been actually litigated prior to bankruptcy. The decision of the court would have been the same had *Brown* and federal preclusion law been applied, so that invocation of an exception to section 1738 was unnecessary as was any reference to *Brown*. *St. Laurent*, therefore, cannot possibly stand for the proposition

### (c) *Brown* has been recognized as an exception to full faith and credit

■ In *Marrese,* the Supreme Court reiterated a caveat expressed in previous opinions, that is, a federal court in the narrow instance where a federal statute enacted subsequent to section 1738 contains an express or implied repealer of that statute, may recognize an exception to section 1738 and refuse to give preclusive effect to a state court judgment even if the state law of preclusion mandates that the judgment should otherwise defeat the federal litigation. Does *Brown* mandate an exception to section 1738 in dischargeability proceedings involving a state court default judgment rendered prior to bankruptcy? The following excerpt from the Court's opinion in *Marrese* answers that question. Justice Sandra Day O'Connor wrote:

> that state preclusion law must be blindly followed in bankruptcy dischargeability proceedings in circumstances where the state judgment involved was rendered by simple default.
>
> In his dissenting opinion in *Nourbakhsh v. Gayden (In re Nourbakhsh),* 162 B.R. 841 (9th Cir. BAP(Cal.) 1994) *aff'd,* 67 F.3d 798 (9th Cir. 1995), Judge Barry Russell reached the same conclusion regarding the effect of *St. Laurent.* He wrote:
>> The Eleventh Circuit in *In re St. Laurent,* 991 F.2d 672 (11th Cir.1993), in dictum noted that in a dischargeability proceeding that the collateral estoppel law of the state rendering the judgment must be applied. The entire discussion on this point is the following: If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. *In re Touchstone,* 149 B.R. 721, 725 (Bankr.S.D.Fla.1993). *In re St. Laurent,* 991 F.2d at 675–76. The applicability of 28 U.S.C. § 1738 was clearly never an issue, probably because there was an actual trial in the state court and the remaining elements of collateral estoppel under the state law were the same as under federal law.
> 162 B.R. at 847 n. 1.
>
> Subsequent to the Supreme Court's decision in *Marrese,* the Court of Appeals for the Eleventh Circuit decided several cases, other than *St. Laurent,* which also turned on the issue preclusive effect to be accorded a state court judgment. Those cases included *Hoskins v. Yanks (In re Yanks),* 931 F.2d 42 (11th Cir.1991); *Lee v. Ikner (In re Ikner),* 883 F.2d 986 (11th Cir.1989); *Halpern v. First Georgia Bank,* 810 F.2d 1061 (11th Cir.1987); and *Balbirer v. Austin,* 790 F.2d 1524 (11th Cir.1986).

In this case the Court of Appeals should have first referred to Illinois law to determine the preclusive effect of the state judgment. Only if state law indicates that a particular claim or issue would be barred, is it necessary to determine if an exception to § 1738 should apply. Although for purposes of this case, we need not decide if such an exception exists for federal antitrust claims, we observe that the more general question is whether the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738. Resolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary consideration must be the intent of Congress. See *Kremer, supra,* 456 U.S., at 470–476, 102 S.Ct., at 1891–1894 (finding no con-

> In none of those four cases was *Marrese* or any other Supreme Court case dealing with the full faith and credit statute cited. Neither did any of the panels that decided those cases refer to state law of issue preclusion or cite any state issue preclusion cases. In only one, did the court even obliquely mention the issue. In *Balbirer,* the court held that an Illinois consent judgment could not constitute collateral estoppel unless the party pleading collateral estoppel proved from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as final adjudication of a particular issue. 790 F.2d at 1528. As the basis of that proposition, the court relied on *United States v. International Building Co.,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953), *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530 (5th Cir.1978), *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 992 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978), *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981), and *In re Ross,* 602 F.2d 604, 608 (3d Cir.1979), all federal court precedents. The court also held that the bankruptcy court's inquiry into the basis of and intent behind the state court judgment would not:
>> violate the dictates of full faith and credit or federal-state comity. Such an investigation in no way challenges the validity of the Illinois judgment or circumvents its effect. On remand, the bankruptcy court need only determine what issues, if any, actually were resolved by the Illinois judgment. The court would then decide whether to declare those issues established in the present litigation as a matter of collateral estoppel.
> Id.

528

gressional intent to depart from § 1738 for purposes of Title VII); cf. Brown v. Felsen, 442 U.S. 127, 138, 99 S.Ct. 2205, 2212, 60 L.Ed.2d 767 (1979)(finding congressional intent that state judgments would not have claim preclusive effect on dischargeability issue in bankruptcy.)

470 U.S. at 386, 105 S.Ct. at 1335 (emphasis added).

Had the Supreme Court wished to overrule or question the continued viability of Brown, it would have. Instead, the Court was careful to cite Brown as its sole example of a situation in which congressional intent justified an implied repeal of section 1738 in bankruptcy dischargeability proceedings. Ten years after Marrese, in Matsushita Elec. Industr. Co. v. Epstein, — U.S. —, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996), the Supreme Court once again described Brown as representing a "rare" exception to section 1738 in bankruptcy dischargeability proceedings. Justice Clarence Thomas, wrote:

As an historical matter, we have seldom, if ever, held that a federal statute impliedly repealed § 1738. See Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523–524, 106 S.Ct. 768, 771–772, 88 L.Ed.2d 877 (1986) (AntiInjunction Act does not limit § 1738); Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 83–85, 104 S.Ct. 892, 897–898, 79 L.Ed.2d 56 (1984) (§ 1983 does not limit claim preclusion under § 1738); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 468–476, 102 S.Ct. 1883, 1890–1895, 72 L.Ed.2d 262 (1982)(Title VII of the Civil Rights Act of 1964 does not limit § 1738); Allen v. McCurry, 449 U.S. 90, 96–105, 101 S.Ct. 411, 415–421, 66 L.Ed.2d 308 (1980)(§ 1983 does not limit issue preclusion under § 1738). But cf. Brown v. Felsen, 442 U.S. 127, 138–139, 99 S.Ct. 2205, 2212–2213, 60 L.Ed.2d 767 (1979) (declining to give claim preclusive effect to prior state court debt collection proceeding in federal bankruptcy suit. without discussing § 1738. state law or implied repeals). The rarity with which we have discovered implied repeals is due to the relatively stringent standard for such findings, namely, that there be an " 'irreconcilable

conflict' " between the two federal statutes at issue. Kremer v. Chemical Constr. Corp., supra, at 468, 102 S.Ct., at 1890 (quoting Radzanower v. Touche Ross & Co., 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976)).

— U.S. at —, 116 S.Ct. at 881 (emphasis added).

Even if Alabama preclusion law were such that it accorded collateral estoppel effect to a simple default judgment, this Court would not hold that the plaintiffs' default judgment collaterally estops the debtor from litigating the dischargeability issues before this Court. The Supreme Court's reference to Brown in both Marrese and Matsushita as creating an exception to section 1738 in bankruptcy dischargeability proceedings allows this Court to apply Brown to resolve the issues presented herein, and on that basis this Court finds that the state court judgment entered against the debtor is not entitled to collateral estoppel effect in the dischargeability proceeding before this Court and the plaintiffs' Renewal Motion for Summary Judgment is due to be denied. The plaintiffs are not entitled to summary judgment as a matter of law.

## 2. The State Law Test

A minority of courts apply the State Law Test to determine the collateral estoppel effect of state court default judgments in bankruptcy. The courts that accept this position rely on the United States Supreme Court opinion from Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). If those courts are correct, an application of Marrese requires this Court to consider first, whether the plaintiffs' state court default judgment, under Alabama collateral estoppel law, would preclude a determination of the dischargeability questions in this Court. If it does, the full faith and credit statute of 28 U.S.C. § 1738 would require recognition of that result, and this Court would then be required to consider second, whether there is an exception to the full faith and credit statute for the narrow question of the applicability of state court default judgments in bankruptcy dischargeability proceedings as some courts

have recognized in the decision of the Supreme Court of the United States in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

The plaintiffs in *Marrese* were orthopedic surgeons who filed an antitrust suit in federal district court against a medical association, after their previously filed state court action against the same defendant for wrongful denial of membership had been dismissed involuntarily. In the nonbankruptcy case, the Supreme Court of the United States held that the federal full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to look to the state law of claim preclusion to determine whether a judgment rendered by a state court precludes a subsequent action in federal court, even if the federal claim could not have been raised in the first instance in the state court, such as, a claim within the exclusive jurisdiction of the federal courts.[17]

■ In Alabama, a prior judgment may be accorded collateral estoppel effect if: (1) the issue involved in the prior proceeding was identical to the issue involved in the present proceeding; (2) the issue was "actually litigated" in the prior proceeding; (3) the resolution of the issue was necessary to the prior judgment; and (4) the parties in the present proceeding are the same as those involved in the prior proceeding. *Lott v. Toomey,* 477 So.2d 316, 319 (Ala.1985).

■ Factor number 2 is, of course, the issue before this Court. Does a simple default judgment rendered by an Alabama court satisfy the "actually litigated" requirement so as to qualify that default judgment for collateral estoppel treatment? The Supreme Court of Alabama has said no. In *Crowder v. Red Mountain Mining Co.,* 127

Ala. 254, 29 So. 847 (1900), that court held that a simple default judgment has no collateral estoppel effect because no issues are actually litigated to procure such a judgment. Writing for the court, Justice James R. Dowdell said, "The judgment in the former suit being by default, no contest was had, and consequently no issues were litigated. This being true, the judgment pleaded could not operate as a bar or as an estoppel in the second suit." 127 Ala. at 260, 29 So. at 849–850. In *Barnett v. Pinkston,* 238 Ala. 327, 191 So. 371 (1939) the court again found that a simple default judgment has no collateral estoppel effect. In that case, Chief Justice John C. Anderson wrote:

> The law seems to be well settled that where the subject matter in one suit is different from that in the second, between the same parties, a judgment in the former based upon a default or decree pro confesso does not estop the parties in the second from contesting any issue in the former suit where the subject matters are different in the two suits, in order to constitute res judicata, the issues in the second suit must have been contested and actually litigated in the former.

*Id.* at 238 Ala. at 331–332, 191 So. at 374.

The Supreme Court of Alabama based its decisions in both *Crowder* and *Barnett* on the venerable case of *Cromwell v. County of Sac.,* 94 U.S. 351, 24 L.Ed. 195 (1876), in which the Supreme Court of the United States illuminated the "difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action." *Id.* at 352. Justice

---

**17.** That statute is entitled "State and Territorial statutes and judicial proceedings; full faith and credit" and provides as follows:

> The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by

the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

Stephen J. Field, writing for the court, explained:

> In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defences never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.
>
> But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.

. . . . .

These cases, usually cited in support of the doctrine that the determination of a question directly involved in one action is conclusive as to that question in a second suit between the same parties upon a different cause of action, negative the proposition that the estoppel can extend beyond the point actually litigated and determined. The argument in these cases, that a particular point was necessarily involved in the finding in the original action, proceeded upon the theory that, if not thus involved, the judgment would be inoperative as an estoppel.

. . . . .

It is not believed that there are any cases going to the extent that because in the prior action a different question from that actually determined might have arisen and been litigated, therefore such possible question is to be considered as excluded from consideration in a second action between the same parties on a different demand, although loose remarks looking in that direction may be found in some opinions. On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action.

*Various considerations. other than the actual merits, may govern a party in bringing forward grounds of recovery or defence in one action. which may not exist in another action upon a different demand. such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation. and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction. A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit: it does not make the allegations of the declaration or*

*complaint evidence in an action upon a different claim.* The declaration may contain different statements of the cause of action in different counts. *It could hardly be pretended that a judgment by default in such a case would make the several statements evidence in any other proceeding.*

. . . . .

There is nothing in this language, applied to the facts of the case, which gives support to the doctrine that, whenever in one action a party might have brought forward a particular ground of recovery or defence, and neglected to do so, he is, in a subsequent suit between the same parties upon a different cause of action, precluded from availing himself of such ground.

94 U.S. at 352–358 (emphasis added).

The law in Alabama remains the same. A relatively recent pronouncement on the subject is found in the Supreme Court of Alabama opinion in *AAA Equip. Rental v. Bailey,* 384 So.2d 107 (Ala.1980). In that case, the court held that a stipulated judgment in favor of a plaintiff against a number of co-defendants could not be accorded collateral estoppel effect to preclude one of the co-defendants from filing a subsequent suit against the other co-defendants based on the same facts involved in the earlier suit. The court based its decision on the fact that the previous judgment had resulted from stipulation and not litigation so that no issues were actually litigated in the previous proceeding. The court analogized the stipulated judgment to a judgment rendered by default. Writing for the Court, Justice Sam A. Beatty, stated:

In *Wheeler v. First Alabama Bank of Birmingham, Ala.,* 364 So.2d 1190, 1199 (1978), this Court set out the elements for collateral estoppel. One of these elements was "(2) issue actually litigated in prior action." The factual background for that principle involved two actions, in both of which the right to income from certain trusts was in issue. *In the first suit that issue was actually litigated. that is. the judgment rendered in it was not based upon default, stipulation, or consent. Cf. Matter of McMillan, 579 F.2d 289 (3rd Cir.1978) (issues involved in an action terminated by default judgment not "actually litigated" for purpose of collateral es-*

*toppel).* The existence of actual litigation has allowed collateral estoppel in federal decisions. *Shore v. Parklane Hosiery Co., Inc.,* 565 F.2d 815 (2nd Cir.1977) (corporate officers who have had issues of fact determined against them in non-jury trial of SEC suit for injunctive relief collaterally estopped from relitigating those issues before jury in subsequent derivative action of stockholders); *Oldham v. Pritchett,* 599 F.2d 274 (8th Cir.1979) (co-party defendant allowed to invoke collateral estoppel on issue of negligence in civil action brought after admiralty hearing on exoneration or limitation of liability). (The 8th Circuit Court incidentally, recognized that non-adversity was irrelevant to the doctrine of estoppel, citing *Scooper Dooper Inc. v. Kraftco Corp.,* 494 F.2d 840, at 845 (3rd Cir.1974). Thus the absence of cross-claims between the co-parties did not prevent assertion of the doctrine). The Fifth Circuit has followed this principle. In *Associates Capital Services v. Loftin's Transfer & Storage Co., Inc.,* 554 F.2d 188 (5th Cir.1977), Associates sued in Alabama to collect a debt. The defendant contended that the suit was barred because the plaintiff, an Indiana corporation, had failed to qualify to do business in Alabama. In an earlier case involving this plaintiff, the district court had held adversely to the plaintiff on the "doing business" issue, and in this proceeding the defendant contended that the plaintiff was estopped in the later case from litigating that issue. The Court of Appeals pointed out, however, that the former case had been remanded on appeal in accord with a stipulation of the parties, and settled in the plaintiff's favor. "Therefore," the court stated, "the decision of the district court spawned no precedential effect and renders nugatory the question of collateral estoppel."

*It follows from what we have stated that, as between these co-defendants. the judgment entered in the first action was entitled to no collateral estoppel effect because there was an absence of actual litigation between them as adversaries on the issues of negligence and contributory negligence.*

384 So.2d at 112 (emphasis added).

Based on the above, the plaintiff's default judgment would not be accorded collateral

estoppel effect by Alabama courts; consequently, to the extent the principles enunciated in *Marrese* may be applicable to the issues raised by the parties to this case, the plaintiff's judgment may not be accorded collateral estoppel effect in this proceeding.[18] As such, the plaintiffs' *Renewal Motion for Summary Judgment* is due to be denied.[19] The plaintiffs are not entitled to summary judgment as a matter of law.

### B. Why the General Federal Rule Should Prevail over the State Law Test

This Court does not take issue with those courts that have applied the State Law Test, but finds that the arguments against it are more compelling.

#### 1. Did *Marrese* Change Existing Law?

*Marrese* did not change or expand federal law. Before *Marrese,* in *Becher v. Contoure Lab., Inc.,* 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929), the Supreme Court held that facts determined against the defendant in a state court suit brought to enjoin the improper use of knowledge disclosed confidentially, collaterally estopped the same person from relitigating the same facts in a suit subsequently brought by the same party in federal court for patent infringement. The defendant in the first action argued in the second action that since federal courts have exclusive jurisdiction over suits brought under the patent laws, factual determinations made by the state court, which had no jurisdiction over patent infringement actions, could not be given collateral estoppel effect in the subsequent federal court case. In rejecting that argument, Justice Oliver W. Holmes, writing for the Court, stated:

> That decrees validating or invalidating patents belong to the Courts of the United States does not give sacrosanctity to facts that may be conclusive upon the question in issue. A fact is not prevented from being proved in any case in which it is material, by the suggestion that if it is true

an important patent is void-and although there is language here and there that seems to suggest it we can see no ground for giving less effect to proof of such a fact than to any other. A party may go into a suit estopped as to a vital fact by a covenant. We see no sufficient reason for denying that he may be equally estopped by a judgment.

*Becher,* 279 U.S. at 391–92, 49 S.Ct. at 357–58.

In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), a case decided after, but relatively close in time to *Brown,* the Supreme Court held that facts actually determined against a defendant in a state court criminal proceeding on constitutional issues collaterally estopped the defendant from relitigating the same facts in a suit subsequently brought by him in federal court under the Civil Rights Act. The defendant in the state court proceeding argued that since the express purpose of the Act was "to override the corrupting influence of the Ku Klux Klan and its sympathizers on the governments and law enforcement agencies of the Southern States" and since a prime motive behind its enactment was "grave congressional concern that the state courts had been deficient in protecting federal rights," the findings of the state court, at least in regards to constitutional issues, were presumably suspect and should not, therefore, be accorded collateral estoppel effect. 449 U.S. at 98–99, 101 S.Ct. at 416–17. The Supreme Court rejected that argument. Justice Potter Stewart wrote:

> There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

---

**18.** *Accord Eubanks v. Getty Oil Co.,* 896 F.2d 960, 962–963 (5th Cir.1990); *Meggs v. Booth (In re Booth),* 174 B.R. 619 (Bankr.N.D.Ala.1994).

**19.** Because Alabama law does not accord collateral estoppel effect to default judgments, this

Court need not consider the second part of the State Law Test, that is whether, the full faith and credit exception established by *Brown v. Felsen* applies. On the other hand, if it did, this Court's application of the exception would be obvious.

*Id.* at 104, 101 S.Ct. at 420. (Justice Blackmun filed a dissenting opinion in which Justice Brennan and Justice Marshall joined.)

## 2. Decisions rendered before *Marrese* uniformly held that state court default judgments have no collateral estoppel effect

Despite the Supreme Court decisions in *Becher* and *Allen,* which, unlike *Marrese,* actually involved collateral estoppel rather than res judicata, an even more imposing majority of reported decisions rendered before *Marrese,* based on the general federal rule, also held that state court default judgments may not be accorded collateral estoppel effect in bankruptcy dischargeability proceedings.[20] *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *First Nat'l Bank of Albuquerque v. Franklin (In re Franklin),* 615 F.2d 909 (10th Cir.1980); *In re McMillan,* 579 F.2d 289 (3rd Cir.1978); *Gornall v. Sadwin (In re Sadwin),* 15 B.R. 884 (M.D.Fla. 1981); *Murray v. Day (In re Day), appeal dismissed,* 633 F.2d 217 (6th Cir.1980) 4 B.R. 750 (S.D.Ohio 1980); *Diekman v. Czanik (In re Czanik),* 51 B.R. 637 (Bankr.S.D.Ohio 1985); *Billing Sys., Inc. v. Nee (In re Nee),* 50 B.R. 268 (Bankr.D.Mass.1985); *Aslakson v. Anderson (In re Anderson),* 49 B.R. 655 (Bankr.W.D.Wis.1984)(dicta); *Roesing v. Moccio (In re Moccio),* 41 B.R. 268 (Bankr. D.N.J.1984); *Great American Ins. Co. v. Graziano (In re Graziano),* 35 B.R. 589 (Bankr.E.D.N.Y.1983); *Capital Ins. Agency, Inc. v. Carneal (In re Carneal),* 33 B.R. 922 (Bankr.E.D.Va.1983); *McGovern v. Capparelli (In re Capparelli),* 33 B.R. 360 (Bankr. S.D.N.Y.1983); *Chrysler Credit Corp. v. Brannon,* 29 B.R. 884 (Bankr.S.D.Ohio 1983); *Winkleman v. Fiedler (In re Fiedler),* 28 B.R. 28 (Bankr.M.D.Pa.1982); *Zeunert v. Brink (In re Brink),* 27 B.R. 377 (Bankr. W.D.Wis.1983); *Berkfield v. Goodman (In re Goodman),* 25 B.R. 932 (Bankr.N.D.Ill.1982); *Owen v. Haney (In re Owen),* 24 B.R. 183 (Bankr.N.D.Ohio 1982)(dicta); *Aetna Casualty and Sur. Co. v. Poss (In re Poss),* 23 B.R. 487 (Bankr.E.D.Wis.1982); *Kramer v. Joseph (In re Joseph),* 22 B.R. 319 (Bankr.E.D.N.Y. 1982); *Craycraft v. Adams (In re Adams),* 21 B.R. 301 (Bankr.N.D.Ohio 1982); *Capital Aggregates, Inc. v. Waters (In re Waters),* 20 B.R. 277 (Bankr.W.D.Tex.1982); *Phase I Inc.*

---

**20.** *Becher* stands for the proposition that federal courts, even in cases where they are exercising exclusive jurisdiction, must give collateral estoppel to a determination of facts made by a state court in a related proceeding, even though the state court has no jurisdiction over the subject matter involved in the subsequent federal court case. *Becher* is to collateral estoppel, what *Marrese* is to res judicata. Bankruptcy cases rendered after *Becher.* which apply the general federal rule to deny collateral estoppel to state court default judgments in bankruptcy dischargeability proceedings, based on the extraordinary policy considerations relating to a bankruptcy discharge, are not irrelevant to the present discussion simply because they were rendered *pre-Marrese.* Because of *Becher,* those courts were equally aware of the philosophical clash between full faith and credit and the policies designed by Congress to preserve the sanctity of a debtor's bankruptcy discharge. As explained by the Court of Appeals for the Ninth Circuit:

We acknowledge that a grant of exclusive jurisdiction to federal courts does not automatically preclude the application of the doctrine of collateral estoppel. *Becher v. Contoure Laboratories,* 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929); cf. *Clark v. Watchie,* 513 F.2d 994 (9th Cir.), cert. denied, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). However, we believe that collateral estoppel is inappropriate when "a new determination is warranted ... by factors relating to the allocation of jurisdiction between (the two courts)." Restatement 2d of Judgments § 68.1 © (Tent. Draft No. 4, 1977); cf. *Lyons v. Westinghouse Electric Corp.,* 222 F.2d 184 (2d Cir.), cert. denied, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955) (refusal to give collateral estoppel effect to state court finding of no antitrust violation because of need for "an untrammeled jurisdiction of the federal courts." *Id.* at 189). Congress, in enacting the 1970 Amendments to the Bankruptcy Act, felt that One of the strongest arguments in support of the bill is that, ... a single court, to wit, the bankruptcy court, will be able to pass upon the question of dischargeability of a particular claim and it will be able to develop an expertise in resolving the problems in particular cases.... Since this is a Federal statute, the Federal courts necessarily have the final word as to the meaning of any term contained therein. S.Rep.No.9111–73, 91st Cong., 2d Sess. (1970) at 9. To give collateral estoppel effect to prior state court factual findings would impair the exercise of the expertise of the bankruptcy court. The determination of nondischargeability should remain an exclusive function of the bankruptcy court unimpeded by the refinements of collateral estoppel by state court judgments.

*In re Houtman,* 568 F.2d 651, 653 n. 2 (9th Cir.1978).

534

*v. Black (In re Black),* 18 B.R. 534 (Bankr. D.N.M.1982); *Burton v. Raposa (In re Raposa),* 18 B.R. 448 (Bankr.D.Mass.1982); *Davis v. White (In re White),* 18 B.R. 246 (Bankr.E.D.Va.1982); *Kraft v. Hunter (In re Hunter),* 17 B.R. 523 (Bankr.W.D.Mo.1982); *Leibenhaut v. Ackerman (In re Ackerman),* 16 B.R. 640 (Bankr.D.N.J.1981); *Tapp v. Fairbanks North Star Borough (In re Tapp),* 16 B.R. 315 (Bankr.D.Alaska 1981); *Wilson v. Bursh (In re Bursh),* 14 B.R. 702 (Bankr. D.Ariz.1981); *Long v. Trewyn (In re Trewyn),* 12 B.R. 543 (Bankr.W.D.Wis.1981); *Wafer v. Peterson (In re Peterson),* 9 B.R.

835 (Bankr.D.Nev.1981); *Babcock v. Kratzer (In re Kratzer),* 9 B.R. 235 (Bankr.W.D.Mo. 1981); *Spesco, Inc. v. Richards (In re Richards),* 7 B.R. 711 (Bankr.S.D.Fla.1980); *Paramount Pictures Corp. v. McKenna (In re McKenna),* 4 B.R. 160 (Bankr.N.D.Ill.1980); *Arizona Dept. of Economic Sec. v. Kaliff (In re Kaliff),* 2 B.R. 465 (Bankr.D.Ariz.1979); *In re Lawrence,* 1 B.R. 402 (Bankr.S.D.N.Y. 1979); *Mulkey v. Mallory (In re Mallory),* 1 B.R. 201 (Bankr.N.D.Ga.1979); *see e.g. Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.(Tex.) 1980)(consent judgment, dicta).[21]

This Court accepts that majority position.

**21.** *Berkfield v. Goodman (In re Goodman),* 25 B.R. 932 (Bankr.N.D.Ill.1982) explicitly discussed the above-mentioned as an exception to full faith and credit. As explained by that court, generally applicable limitations on full faith and credit preclude its application to state court default judgments in bankruptcy dischargeability proceedings:

The doctrine of full faith and credit extends only to valid judgments. And even for valid judgments, full faith and credit is subject to certain limitations. Therefore, it is generally considered that full faith and credit does not apply where (1) there is no jurisdiction over the parties, (2) there is an overriding policy of the forum state against the application of full faith and credit in a particular instance, and (3) there is a limitation intrinsically related to the judgment which would prevent the application of full faith and credit in a particular instance.

. . . . .

In effect, pursuant to the second limitation on full faith and credit, the bankruptcy court as the forum court has an overriding policy to be the only court empowered to decide the issue of dischargeability.

*Id.* at 936–937.

In his concurring opinion in *In re McMillan,* 579 F.2d 289 (3rd Cir.1978), Judge John J. Gibbons also determined that an exception should be made to full faith and credit requirements when a state court default judgment is involved in a bankruptcy dischargeability proceeding. Judge Gibbons explained:

In all cases covered by 28 U.S.C. § 1738, federal courts must give state court judgments the same full faith and credit they have in the state of origin.

. . . . .

But I find no reason to rest our decision on New Jersey law. Even if state law on the preclusive effect of the judgment were to the contrary (which it is not), I would vote to affirm the order of the district court in this case. Section 1738 is not without exceptions. Federal habeas corpus is one illustration of the proposition. See *Townsend v. Sain,* 372 U.S.

293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In my opinion, this is another.

In 1970 Congress amended the Bankruptcy Act in order to eliminate certain abuses by finance companies. Under the unamended Act the bankruptcy court had determined whether to grant a discharge, but state courts had been able later to determine whether any given claim had survived discharge because it was founded on a materially false statement intended to deceive. The 1970 amendments were designed to make the bankruptcy court the sole forum for the determination of the dischargeability of a certain type of debt: (a) type of debt held by a finance company against a nonbusiness bankrupt which, through tactics often found abusive of the bankruptcy discharge, survives the discharge in a subsequent suit which the bankrupt failed to defend, for one reason or another. 1A Collier on Bankruptcy P 17.15, at 1628.2 n. 45c (14th ed.1973). See also H.R.Rep. No. 91–1502, 91st Cong.2d Sess. (1970), reprinted in (1970) U.S.Code Cong. & Ad.News, p. 4156.

The issue in this case is whether a finance company holding the same type of debt can evade the congressional intent by securing a state court judgment against a delinquent borrower in anticipation of his bankruptcy. I think that the answer should be no, and that we should admit an exception to the federal duty to recognize state court judgments imposed by § 1738. When Congress expressly identifies an abuse, when it has the constitutional power to correct it, and when as here it exercises that power, then the courts should give the congressional act its full effect. While I agree with the majority's analysis as far as it goes, I would prefer to rest the affirmance on this more fundamental reason.

*Id.* at 293–294.

Most of the cases cited in the text, however, reached the conclusion that state court default judgments should not be accorded collateral estoppel effect in bankruptcy dischargeability proceedings without specifically discussing full faith and credit.

**3. A majority of decisions rendered after *Marrese* have held that state court default judgments have no collateral estoppel effect**

To determine the collateral estoppel effect of state court default judgments, most courts, through decisions rendered after the Supreme Court's decision in *Marrese,* have, in bankruptcy dischargeability proceedings, applied either the general federal rule and the principles of *Brown* or both. And through such application, the majority of those courts have denied collateral estoppel effect to state court default judgments. Of those courts, some found *Marrese* inapplicable to bankruptcy dischargeability proceedings or explicitly recognized application of the general federal rule as an exception to the full faith and credit statute. *Wood v. Dealers Fin. Servs., Inc.,* 199 B.R. 25 (E.D.Mich.1996); *Vogel v. Kalita (In re Kalita),* 202 B.R. 889, 915 (Bankr.W.D.Mich.1996); *Bay Area Factors v. Calvert (In re Calvert),* 177 B.R. 583 (Bankr.W.D.Tenn.1995); *Montgomery v. Kurtz (In re Kurtz),* 170 B.R. 596 (Bankr. E.D.Mich.1994); *Tulin v. Recck (In re Recck),* 167 B.R. 93 (Bankr.N.D.Ohio 1994); *Mitchell v. Kirby (In re Kirby),* 167 B.R. 91 (Bankr.E.D.Ky.1994); *K–Carpet Co. v. Palumbo (In re Palumbo),* 1994 WL 127599 (Bankr.N.D.Ohio, March 24, 1994); *Carmel v. Thomas (In re Thomas),* 1994 WL 92413 (Bankr.N.D.Ohio, Feb.18, 1994); *Nationwide Mut. Fire Ins. Co. v. Hale (In re Hale),* 155 B.R. 730 (Bankr.S.D.Ohio 1993); *Hamilton Bank of Upper East Tennessee v. Morrison (In re Morrison),* 119 B.R. 135 (Bankr. E.D.Tenn.1990); *Pizza Palace, Inc. v. Stiles (In re Stiles),* 118 B.R. 81 (Bankr.W.D.Tenn. 1990); *Estate of Schubert v. Rudd (In re Rudd),* 104 B.R. 8 (Bankr.N.D.Ind.1987)(dicta); *Ferguson v. Hall (In re Hall),* 95 B.R. 553 (Bankr.E.D.Tenn.1989); *Wright v. McIntyre (In re Wright),* 57 B.R. 961 (Bankr. N.D.Ga.1986); *Shafer v. Wintrow (In re Wintrow),* 57 B.R. 695 (Bankr.S.D.Ohio 1986); *Clarks Delivery, Inc. v. Moultrie,* 51 B.R. 368 (Bankr.W.D.Wash.1985)(dicta); *see e.g, Altus Bank v. Stacey (In re Stacey),* 105 B.R. 672 (Bankr.S.D.Ala.1989)(consent judgment); *cf. Naemi v. Naemi (In re Naemi),* 128 B.R. 273 (Bankr.S.D.Cal.1991)(to insure pro rata distribution of bankruptcy estate, as exception to section 1738, bankruptcy court refused to accord collateral estoppel effect to state court default judgment which created constructive trust on all debtor's property); *In re Comstock Fin. Servs., Inc.,* 111 B.R. 849 (Bankr.C.D.Cal.1990)(to insure pro rata distribution of bankruptcy estate, as exception to section 1738, bankruptcy court refused to accord collateral estoppel effect to state court default judgment which created constructive trust on all debtor's property).

Others, based on the general federal rule, have held without reference to either *Marrese,* state law, or the full faith and credit statute, that state court default judgments should not be accorded collateral estoppel effect. *M & M Transmissions, Inc. v. Raynor (In re Raynor),* 922 F.2d 1146 (4th Cir. 1991); *L & R Assocs. v. Curtis,* 194 B.R. 407 (E.D.Va.1996); *Polechronis v. Cape Cod Needleworks, Inc. (In re Polechronis),* 186 B.R. 1 (D.Mass.1995); *Jones v. Indiana Fin. Co.,* 180 B.R. 531 (S.D.Ind.1994); *Evans v. Dunston (In re Dunston),* 146 B.R. 269 (D.Col. 1992); *Colwell v. Lucas (In re Lucas),* 186 B.R. 67 (Bankr.E.D.Va.1995); *Schaffer v. Dempster (In re Dempster),* 182 B.R. 790 (Bankr.N.D.Ill.1995); *Kulesa v. Stankovich (In re Stankovich),* 171 B.R. 27 (Bankr. E.D.Va.1994); *Custom Coffee Serv., Inc. v. Raguso (In re Raguso),* 1994 WL 744333 (Bankr.N.D.Ill., December 21, 1994)(dicta); *Outlaw v. Cuffey (In re Cuffey),* 162 B.R. 469 (Bankr.E.D.Va.1993); *Casey v. Transport Life Ins. Co. (In re Dorsey),* 1993 WL 340928 (Bankr.N.D.Ill., Aug.19, 1993); *Lawrence Steel Erection Co. v. Mercy (In re Piercy),* 140 B.R. 108 (Bankr.D.Md.1992); *Goins v. Day (In re Day),* 137 B.R. 335 (Bankr.W.D.Mo.1992)(dicta); *Napshin v. Goetz (In re Goetz),* 134 B.R. 367 (Bankr. W.D.Mo.1991); *Waters v. Sharp (In re Sharp),* 119 B.R. 779 (Bankr.D.Idaho 1990); *First Baptist Church v. Maurer (In re Maurer),* 112 B.R. 710 (Bankr.E.D.Pa.1990); *Buoscio v. Costarella (In re Costarella),* 104 B.R. 465 (Bankr.M.D.Fla.1989); *Couch v. Rubitschung (In re Rubitschung),* 103 B.R. 1010 (Bankr.C.D.Ill.1988); *Pacific Energy and Minerals. Ltd. v. Austin (In re Austin),* 93 B.R. 723 (Bankr.D.Col.1988)(dicta); *Ward v. Roberson (In re Roberson),* 92 B.R.

536

263 (Bankr.S.D.Ohio 1988); *Hoffman v. Sheahan (In re Sheahan)*, 87 B.R. 67 (Bankr. E.D.Mo.1988); *Epic Realty Servs., Inc. v. Turner (In re Turner)*, 81 B.R. 134 (Bankr. S.D.Fla.1987); *Bishop v. Herwig (In re Herwig)*, 77 B.R. 662 (Bankr.S.D.Ill.1987)(dicta); *Watson v. Buhay (In re Buhay)*, 77 B.R. 561 (Bankr.W.D.Tex.1987); *Urbana University v. Jones (In re Jones)*, 76 B.R. 616 (Bankr. S.D.Ohio 1987); *Sixteen Twenty Eight Bellevue Ltd. Partnership v. Barigian (In re Barigian)*, 72 B.R. 407 (Bankr.C.D.Cal.1987); *Pesak v. Weitzel (In re Weitzel)*, 72 B.R. 253 (Bankr.N.D.Ohio 1987); *Benson v. Haskin (In re Haskin)*, 68 B.R. 370 (Bankr.S.D.Ohio 1986); *Bryant v. Bishop (In re Bishop)*, 55 B.R. 687 (Bankr.W.D.Ky.1985) (dicta); *Luton v. Sostarich (In re Sostarich)*, 53 B.R. 27 (Bankr.W.D.Ky.1985); *Commonwealth of Virginia, Comm'n of Game and Inland Fisheries v. Myers (In re Myers)*, 52 B.R. 901 (Bankr.E.D.Va.1985); *WSE Warehouse v. Holmes (In re Holmes)*, 52 B.R. 35 (Bankr. W.D.Pa.1985).

The apparent reason that these courts are able to agree is that *Marrese* did not change existing law.

This Court finds that the General Federal Rule applicable to bankruptcy dischargeability proceedings is based on the policy considerations relied upon by the Supreme Court in *Brown v. Felsen*. The multitude of decisions that have applied the General Federal Rule to state court default judgments do not represent disrespect for state court judgments. These cases represent an honest attempt to preserve the opportunity of the fresh start which Congress intended for the honest but unfortunate debtor by insuring that the factual basis of dischargeability issues are subject to examination and tested by a full adversary process in either the state court or the bankruptcy court, and these decisions recognize that, as a practical matter, a judgment rendered by default prior to bankruptcy in a nonbankruptcy forum defeats that opportunity if accorded collateral estoppel effect in the bankruptcy court.[22]

### 4. Problems Presented by Decisions Rendered Under The State Law Test

In contrast to the above, many courts have legitimately applied state law to issue preclusion questions in bankruptcy court. An analysis of these cases demonstrate, however, the problems that may occur in applying such law, notwithstanding that the majority of courts that apply state law deny collateral estoppel effect to the reviewed state court judgments.

After 1970, states have not been asked to determine the preclusive effect of a state court judgment on a bankruptcy dischargeability proceeding. After the date that Congress, through the 1970 amendments, placed exclusive jurisdiction over the determination of dischargeability issues in the bankruptcy court, there is literally no law on the subject. In state courts, when the same parties involved in prior proceedings are involved in subsequent proceedings, res judicata ordinarily disposes of the litigation so that the issue of the collateral estoppel effect of the judgment rendered in the prior proceeding is rarely reached, that is unless the cause of action involved in the subsequent proceeding is completely different from that involved in the first.

---

**22.** "The principles underlying the 'fresh start' also provide compelling reasons here for recognizing an exception to the general rule of applying the doctrine of collateral estoppel or issue preclusion when the prior judgment is a state court default judgment." *Bay Area Factors v. Calvert (In re Calvert)*, 177 B.R. 583, 588 (Bankr. W.D.Tenn.1995). "[T]he policy considerations attendant a bankruptcy discharge weigh strongly in favor of nonpreclusion." *Olson v. United States (In re Olson)*, 170 B.R. 161, 166 (Bankr. D.N.D.1994). "[T]he operation of, and policy behind, the Bankruptcy Code may reasonably be interpreted to provide an exception to 28 U.S.C. § 1738." *Tulin v. Recck (In re Recck)*, 167 B.R. 93, 97 (Bankr.N.D.Ohio 1994). "To advance the congressional policy behind § 523 in securing a debtor's chance at obtaining a discharge of debts, an exception to 28 U.S.C. § 1738 is warranted." *Nourbakhsh v. Gayden (In re Nourbakhsh)*, 162 B.R. 841, 853 (9th Cir.BAP1994)(Russell, J., dissenting). "[T]he policies underlying the fresh start granted by a discharge in bankruptcy and practical realities associated with the defense of multiple lawsuits which often precede a bankruptcy filing, make it inappropriate to use facts established only in an uncontested proceeding to find the nature of an obligation sought to be discharged." *Stull v. Holt (In re Holt)*, 102 B.R. 116, 120 (Bankr. S.D.Ohio 1989).

The question of the collateral estoppel effect of a default judgment in dischargeability matters will always be a hypothetical one under state law and its answer will consequently require the artificial application of state law pronounced in cases involving issues and considerations foreign to bankruptcy.[23] This is particularly true because state law on the subject of the collateral estoppel effect of state court default judgments even in nonbankruptcy matters, is very difficult to discern. There are many areas ripe for error and misinterpretation.[24] Very few state appellate courts and fewer state courts of last resort have clearly decided the issue. In some states, lower appellate courts appear to have given the issue disparate treatment.[25]

**23.** "An effect of these bankruptcy court decisions would be to provide undue deference to indeterminate state court claim and issue preclusion decisions and thereby not only dilute the congressional mandate that bankruptcy courts exclusively determine dischargeability issues under 11 U.S.C. § 523(c), but also give state court judgments greater preclusive effect than would the courts of the State rendering the judgment." *Shafer v. Wintrow (In re Wintrow)*, 57 B.R. 695, 701 (Bankr.S.D.Ohio 1986).

**24.** Chief Justice Burger, in his concurring opinion in *Marrese*, recognized the potential for confusion when state law is indeterminate on an issue regarding the preclusive effect of a state court judgment. "The Court now remands with directions for the District Court to consider Illinois claim preclusion law, but no guidance is given as to how the District Court should proceed if it finds state law silent or indeterminate on the claim preclusion question." 470 U.S. at 388, 105 S.Ct. at 1336. The Chief Justice determined that Illinois law was probably indeterminate on the claim preclusion subject involved in that particular case, and opined that if state law is indeterminate on a claim or issue preclusion subject, the federal court faced with the question should utilize a federal rule of decision:

Hence it is likely that the principles of Illinois claim preclusion law do not speak to the preclusive effect that petitioners' state court judgments should have on the present action. In this situation, it may be consistent with § 1738 for a federal court to formulate a federal rule to resolve the matter. If state law is simply indeterminate, the concerns of comity and federalism underlying § 1738 do not come into play. At the same time, the federal courts have direct interests in ensuring that their resources are used efficiently and not as a means of harassing defendants with repetitive lawsuits, as well as in ensuring that parties asserting federal rights have an adequate opportunity to litigate those rights. Given the insubstantiality of the state interests and the weight of the federal interests, a *strong argument could be made that a federal rule would be more appropriate than a creative interpretation of ambiguous state law.* When state law is indeterminate or ambiguous, a clear federal rule would promote substantive interests as well: "Uncertainty intrinsically works to defeat the opportunities for repose and reliance sought by the rules of preclusion, and confounds the desire for efficiency by inviting repetitious litigation to test the preclusive effects of the first effort." 18 C. Wright, A. Miller, & E. Cooper, supra, n. 3, § 4407, at 49.

*Id.* at 390, 105 S.Ct. at 1337 (footnotes omitted)(emphasis added).

**25.** Compare *Hickey v. Hancock Wood Elec. Coop.*, 1993 WL 241731 *3 (Ohio App., June 30, 1993)("As to whether collateral estoppel was available where the original judgment was obtained by default, Section 68(f) of the Restatement provides that a default judgment is conclusive as to the cause of action upon which the first action was based, ' * * * [b]ut in a subsequent suit based upon a different cause of action the judgment is not conclusive as to the truth of the allegations in the plaintiff's complaint'.") and *North Dayton Truck Serv. v. Terrell*, 1982 WL 3691 *2 (Ohio App., March 15, 1982)("in view of the fact that appellee had obtained a default judgment in the action against appellant's husband, no issue was actually and necessarily litigated and determined therein," and collateral estoppel could not be accorded to the judgment) with *Corydon Palmer Dental Society v. Johnson, Johnson & Assocs., Inc.*, 1988 WL 21334 *2 (Ohio App., Feb.16, 1988)(collateral estoppel ". . . has been applied to judgments by default."); *Rico's Red Lion Pizza Parlors, Inc. v. Amusement World, Inc.*, 1983 WL 4827 *5 (Ohio App., February 23, 1983)("The doctrine of res judicata, including collateral estoppel as to matters essential to the judgment, applies to judgments by default.").

For a demonstration of the problems surfacing, compare *Horton v. Morrison*, 248 Va. 304, 448 S.E.2d 629, 631 (1994)("In the present case, the trial court rendered a default judgment in favor of Morrison in her third-party action against Horton, and no issues relating to Horton's negligence were actually litigated. Consequently, we hold that the default judgment cannot be the basis of Morrison's claim of collateral estoppel.") and *Snead v. Bendigo*, 240 Va. 399, 397 S.E.2d 849, 851 (1990)("Because the issue of the physician's negligence was not 'actually litigated' in the debt-collection case, the trial court erred in holding the malpractice case barred by collateral estoppel. Accordingly, we will reverse the judgment and remand the malpractice case for further proceedings.") with *Transdulles Center, Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274, 276 (1996)("Virginia law does not support a blanket exemption from the application of collateral estoppel in the case of a default judgment.").

In those states, in states in which there is no clear pronouncement by the appellate courts, or in states where the pronouncements by the appellate courts are in conflict, bankruptcy courts are left to guess work and speculation.[26] This speculation in turn always risks nullification by decisions subsequently rendered by appellate courts of that state. And any decision made by a bankruptcy court based on the pronouncement of a lower state appellate court risks nullification if the state court of last resort subsequently reaches a different conclusion. Every change and clarification in state case law will carry the potential of turning bankruptcy precedent pertaining to the law of that state topsy turvy and will undermine the decision of any bankruptcy court which had previously addressed the issue. The bankruptcy courts that have looked to applicable state law to determine whether state court default judgments have

26. Many bankruptcy courts faced with the task of discerning indeterminate state law have bemoaned the absence of clear state precedent: "The courts of the state of Nevada have not decided whether a default judgment will satisfy the 'actual litigation' requirement of the doctrine of collateral estoppel. Because this is so, we must determine how the Nevada courts, if presented with the issue, would decide it." *Word v. Bailey (In re Bailey,)* 203 B.R. 640, 643 (Bankr. S.D.Ohio 1996)(holding that Nevada courts probably would not accord collateral estoppel effect to default judgments because they would not accord collateral estoppel effect to consent judgments).

"Unfortunately, the Court found no Illinois cases which have decided whether a default judgment satisfies the 'actually litigated' requirement under Illinois law." *Meyer v. Asbury (In re Asbury),* 195 B.R. 412, 416 (Bankr.E.D.Mo.1996)(holding that Illinois default judgment entered as discovery sanction could not be given collateral estoppel effect because the judgment did not contain sufficient findings of fact).

"The Supreme Judicial Court [of Massachusetts] has not addressed the issue of whether a default judgment satisfies the 'actually litigated' requirement." *Phalon v. Varrasso (In re Varrasso,)* 194 B.R. 537, 539 (Bankr.D.Mass.1996)(holding by analogy that because under Massachusetts law a guilty plea has no collateral estoppel effect, neither does a default judgment).

"The Ohio courts have not expounded on what constitutes 'actual and direct litigation.'" *Dean v. Rogers (In re Rogers),* 189 B.R. 136, 139 (Bankr.N.D.Ohio 1995)(Baxter, J.)(holding that Ohio default judgment was not entitled to collateral estoppel based on the decisions of other non-Ohio courts that have defined that phrase).

"While the question is a close one and the California authorities are less than clear, the court believes that Fitzgerald has not been disapproved and that on the record presented in this instance, namely early participation in the case by Defendant and a subsequent prove-up hearing in the San Fransisco Superior Court, a California court would apply California law to bind Defendant as to the matters necessarily decided that resulted in the Default Judgment." *Newsom v. Moore (In re Moore),* 186 B.R. 962, 971 (Bankr.N.D.Cal. 1995)(based on a pre–1970 amendments California case holding that a state court judgment precludes relitigation of dischargeability issues in bankruptcy, the court held that a default judgment under the particular circumstance of that case could be accorded collateral estoppel effect under California law).

"In the absence of any Texas precedent on point, bankruptcy courts have relied on both § 27 of the Restatement and its official comments, in their attempt to apply the law." *Crain v. Limbaugh (In re Limbaugh),* 155 B.R. 952, 956 (Bankr.N.D.Tex.1993)(held, based on Restatement (Second) Judgments § 27 and comment e, true default judgment should not be given collateral estoppel effect but penalty default should, under Texas law).

"Although Texas courts have not expressly addressed the issue, the court concludes that Texas courts would hold that default judgments are not actually litigated." *Thompson v. Turner (In re Turner),* 144 B.R. 47, 53 (Bankr.E.D.Tex.1992)(holding, based on the general "actually litigated" requirement of Texas collateral estoppel law and fact that Texas courts have relied on the Restatement (Second) Judgments in other circumstances for support, that default judgments may not be given collateral estoppel effect under Texas law).

"While there is no Washington cases which specifically addresses the issue of whether a default judgment satisfies the 'actually litigated' requirement, the existing authority is that it does not." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania (In re Boyovich),* 126 B.R. 348, 349 (Bankr.W.D.Wash.1991)(holding, based on the general "actually litigated" requirement of Washington collateral estoppel law and Restatement (Second)Judgments § 27 comment "e" as supporting authority, that default judgments may not be given collateral estoppel effect under Washington law).

"None of the Texas cases cited in this opinion directly reached this issue either because none of the underlying trial court judgments were based on default." *Cardenas v. Stowell (In re Stowell),* 113 B.R. 322 (Bankr.W.D.Tex.1990)(holding that, under Texas law, a default judgment may not be accorded collateral estoppel effect, based on the "fully and fairly litigated" requirement of Texas collateral estoppel law and fact that Texas courts have adopted Restatement (Second)Judgments § 27 as their rule of issue preclusion and have looked to comments d, h, I, and j of that section for guidance in other situations).

collateral estoppel effect in bankruptcy dischargeability proceedings, have dealt with these problems in their own ways.

**(a) Application of state laws where default judgments do not have collateral estoppel effect in bankruptcy dischargeability proceedings**

Some courts have examined the question of the collateral estoppel effect of state court default judgments in accordance with applicable state laws of issue preclusion pursuant to section 1738. Such examinations, pursuant to *Marrese* and the procedure outlined there, require courts to refer first to state law to determine the preclusive effect of the state court default judgment. Then, if state law indicates that the state court default judgment should be accorded collateral estoppel effect, it becomes necessary for courts to determine if an exception to section 1738 should apply.[27] Most of the courts, however, that have considered state law still find that default judgments should not be given collateral estoppel effect. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 199 B.R. 350 (N.D.Tex.1996)(Texas judgment); *Stokes v. Vierra*, 185 B.R. 341 (N.D.Cal.1995)(South Carolina judgment); *Bell v. Douglass*, 184 B.R. 301 (N.D.Ill.1995)(Iowa judgment); *Word v. Bailey (In re Bailey)*, 203 B.R. 640, 643 (Bankr.S.D.Ohio 1996)(Nevada judgment); *Phalon v. Varrasso (In re Varrasso)*, 194 B.R. 537 (Bankr.D.Mass.1996)(Massachusetts judgment); *Navab v. Barzegar (In re Barzegar)*, 189 B.R. 864 (Bankr.N.D.Ga.1995)(Maryland judgment); *Dean v. Rogers (In re Rogers)*, 189 B.R. 136 (Bankr.N.D.Ohio 1995)(Ohio judgment); *Hildebrand v. Kugler (In re Kugler)*, 170 B.R. 291 (Bankr.E.D.Va.1994)(Virginia judgment); *Brose v. Hubbard (In re Hubbard)*, 167 B.R. 969 (Bankr.D.N.M.1994)(Oregon judgment); *Harner v. Carlson (In re Carlson)*, 156 B.R. 582 (Bankr.S.D.Ind. 1992)(Indiana judgment); *Sutton v. Holland (In re Holland)*, 155 B.R. 745 (Bankr. S.D.Ind.1992)(Indiana judgment); *Stoll v. Conway (In re Conway)*, 148 B.R. 881 (Bankr.E.D.Wis.1992)(Wisconsin judgment); *Thompson v. Turner (In re Turner)*, 144 B.R. 47 (Bankr.E.D.Tex.1992)(Texas judgment); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania (In re Boyovich)*, 126 B.R. 348 (Bankr.W.D.Wash.1991) (Washington judgment); *Cardenas v. Stowell (In re Stowell)*, 113 B.R. 322 (Bankr.W.D.Tex.1990)(Texas judgment).[28]

---

**27.** Those decisions in which the bankruptcy courts have, as a matter of state law, refused to accord collateral estoppel effect to state court default judgments in a bankruptcy dischargeability proceeding are, of course, inopposite to the conclusion that *Brown* established an exception to section 1738, since the bankruptcy courts in those cases were not required under *Marrese* to decide whether an exception to section 1738 should apply.

**28.** According to the interpretations made by those courts, state law in Texas, South Carolina, Iowa, Massachusetts, Maryland, Nevada, Ohio, Virginia, Oregon, Indiana, Wisconsin, and Washington does not afford collateral estoppel effect to default judgments rendered by the courts of those states.

Courts in states other than Alabama have expressed the view that default judgments ordinarily carry no collateral estoppel effect. Those states include Alaska, Arizona, Connecticut, Delaware, Idaho, Indiana, Iowa, Massachusetts, Maine, New Hampshire, New Jersey, Pennsylvania, Rhode Island, Utah, West Virginia and Wisconsin.

Alaska:

"In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [Restatement (Second) of Judgments § 27 (1982)] does not apply with respect to any issue in a subsequent action." *Jackinsky v. Jackinsky*, 894 P.2d 650, 655 (Alaska 1995). *See also F.T. v. State*, 862 P.2d 857, 864 n. 13 (Alaska 1993).

Arizona:

"[I]n the case of a judgment entered by confession, consent or default, none of the issues is actually litigated." *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 716 P.2d 28, 30 (1986). *See also State v. Powers*, 184 Ariz. 235, 908 P.2d 49, 51 (Civ.App.1995); *Circle K Corp. v. Industrial Comm'n of Arizona,* 179 Ariz. 422, 880 P.2d 642, 645 (Civ.App.1993).

Connecticut:

"Although not every default judgment should have the same issue preclusive effect as an actual adjudication between the present parties, in the interest of judicial economy and repose for litigants, we envision *some* circumstances where it would be appropriate to give issue preclusive effect to a default judgment." *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 627 A.2d 374, 379 (1993). See also *Numberg v. Twaite*, 1994 WL 146038 *2–*3 (Conn.Super. April 15, 1994); *Yellow Freight Sys., Inc. v. Spinnetta*, 1994 WL 133455, *1–*2 (Conn.Super., March 16, 1994).

Delaware:

"Thus, an issue raised in a proceeding which was eventually decided by default can be relitigated in a subsequent proceeding." *State v. Machin*, 642 A.2d 1235, 1240 (Del.Super.1993) *appeal dismissed*, 655 A.2d 1225 (Del. Supr.1995). See also *Patterson v. Shahan*, 1995 WL 108925 *2 (Del.Super., January 31, 1995); *Dillon v. General Motors Corp.*, 315 A.2d 732, 736 (Del.Super.1974); *Petrucci v. Landon*, 107 A.2d 236, 239 (Del.Super.1954)

Iowa:

"Collateral estoppel is usually not available in default cases. We recognized this distinction and referred to the collateral estoppel doctrine in *Matson v. Poncin*, 152 Iowa 569, 572, 132 N.W. 970, 971, 38 L.R.A.N.S., 1020, where we said: ' * * * it must appear that the particular matter was considered and passed on in the former suit, or the adjudication will not operate as a bar to subsequent action.' " *Lynch v. Lynch*, 250 Iowa 407, 94 N.W.2d 105, 108 (1959). *See also Ideal Mut. Ins. Co. v. Winker*, 319 N.W.2d 289, 296 (Iowa 1982).

Idaho:

"Collateral estoppel (issue preclusion) is only applicable where specific issues actually have been litigated and decided. Thus, a defaulting party ordinarily is not barred from later raising a particular issue which was not resolved in earlier litigation." *Farrell v. Brown*, 111 Idaho 1027, 729 P.2d 1090, 1093 (App.1986) (citations omitted). See also *Blaine County v. Bryson*, 109 Idaho 123, 705 P.2d 1078, 1081 (App.1985).

Indiana:

"[F]airness dictates that if the judgment is by default then the issue is not precluded in a subsequent suit." *Porter's South Shore Cleaners v. State*, 512 N.E.2d 895, 898 (Ind. Tax Court 1987).

Massachusetts:

"In the last analysis, '[t]he rule of issue preclusion, sometimes referred to as collateral estoppel ... is that a party ordinarily may not relitigate an issue that he fully and fairly litigated on a previous occasion.' Restatement (Second) of Judgments, Chapter 1, Scope (emphasis added). For that reason, a default judgment does not ordinarily preclude relitigation of an issue necessary to the judgment when that issue is raised in subsequent litigation between different parties. Any other result would subvert the time and resource saving reasons for creation of the doctrine itself. Once a lawsuit was brought, parties would be forced to litigate fully all issues tendered by an opposing party in order to escape a bar by default to their later litigation of those issues not only against the original parties but against everyone else in the world as well." *North Capitol Enters. v. Cassidy*, 1994 WL 878822 (Mass.Super., December 19, 1994) (citations omitted). *See also Miles v. Aetna Cas. and Sur. Co.*, 412 Mass. 424, 589 N.E.2d 314, 317 (1992); *Aetna Casualty & Sur. Co. v. Niziolek*, 395 Mass. 737, 481 N.E.2d 1356, 1363 (1985); *Rubinstein v. Rubinstein*, 319 Mass. 568, 66

N.E.2d 793, 795 (1946); *Watts v. Watts*, 160 Mass. 464, 36 N.E. 479 (1894).

Maine:

"Finally, the order entered by default in the Secretary of State's license suspension proceeding can have no collateral estoppel effect since that order did not result from the actual litigation of any issue on the merits." *State v. Lewry*, 550 A.2d 64, 65 (Me.1988).

New Hampshire:

"Collateral estoppel bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action. In the case of a judgment entered by ... default, none of the issues is actually litigated." *Marston v. United States Fidelity and Guar. Co.*, 135 N.H. 706, 609 A.2d 745, 748 (1992) (citations and internal quotation marks omitted). *See also White Mountain Constr. Co. v. Transamerica Ins. Co.*, 137 N.H. 478, 631 A.2d 907, 911 (1993); *Lovejoy v. Ashworth*, 94 N.H. 8, 45 A.2d 218, 219 (1946)

New Jersey:

"[T]he second part of the test is not satisfied because the default judgment that was entered against Olivera was, without a doubt, not a decision 'on the merits.'

'On the merits' means that the factual issues directly involved must have been actually litigated and determined. Although plaintiff offered her own testimony and the report of a handwriting expert at the proof hearing to support her allegations of fraud and forgery, this evidence was not presented in an adversarial context. A successful plaintiff in any default judgment can be required to furnish some proof on the merits of the issues to show entitlement to the relief demanded. However, the entry of the default precluded Olivera from offering any testimony in defense. Thus, the issues of fraud and forgery were never actually litigated and determined."

*Slowinski v. Valley Nat'l Bank*, 264 N.J.Super. 172, 624 A.2d 85, 90–91 (App.Div.1993). *See also Allesandra v. Gross*, 187 N.J.Super. 96, 453 A.2d 904, 910 (App.Div.1982).

New Mexico:

"[A] default judgment has no collateral estoppel effect." *Blea v. Sandoval*, 107 N.M. 554, 761 P.2d 432, (App.1988) *cert. denied*, 107 N.M. 413, 759 P.2d 200 (1988).

New York:

[C]ollateral estoppel effect will only be given to matters "actually litigated and determined" in a prior action. "If the issue has not been litigated, there is no identity of issues between the present action and the prior determination. An issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation." *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985). See also *In the Matter of Halyalkar v. Board of Regents of State of New York*, 72 N.Y.2d 261, 532 N.Y.S.2d 85, 89, 527 N.E.2d 1222 (1988); *Gerney v. Tishman Construction Corp. of New*

**(b) Application of state laws where default judgments do have collateral estoppel effect in bankruptcy dischargeability proceedings**

In contrast however, there are some courts that have both applied state law and have held that state court default judgments may be accorded collateral estoppel effect in bankruptcy dischargeability proceedings where, under applicable state law, the same default judgments would, by way of collateral estoppel, preclude the litigation of issues in the courts of the state in which the judgments were rendered. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798 (9th Cir.1995)(Florida judgment); *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51 (6th Cir.1995); *White v. Rogers (In re Rogers)*, 57 F.3d 1070, 1995 WL 364154 (6th Cir. June 16, 1995)(Tennessee judgment)(unpublished disposition); *Right Up Your Alley, Inc. v. Dorand*, 1996 WL 46715 (E.D.La., Feb.6, 1996) *vacated on reh'g*, 1996

*York,* 136 Misc.2d 1051, 518 N.Y.S.2d 564, 566 (N.Y.Sup.Ct.1987); *Pigliavento v. Tyler Equipment Corp.,* —— A.D.2d ——, 650 N.Y.S.2d 414, 414 (3 Dept.1996); *Philan Insurance Ltd. v. Frank B. Hall & Co.,* 170 Misc.2d 729, 651 N.Y.S.2d 289, 290–91 (N.Y.Sup.Ct.1996); *S.D.I. Corp. v. Fireman's Fund Insurance Cos.,* 208 A.D.2d 706, 617 N.Y.S.2d 790, 793 (2 Dept.1994); *Yuska v. State Farm Insurance Co.,* 203 A.D.2d 560, 611 N.Y.S.2d 203, 204 (N.Y.A.D. 2 Dept.1994); *Giordano v. Patel,* 177 A.D.2d 468, 575 N.Y.S.2d 900, 902 (N.Y.A.D. 2 Dept.1991); *Summa Envtl. Servs., Inc. v. Fifth Avenue Partners,* 176 A.D.2d 664, 575 N.Y.S.2d 317, 318 (1 Dept.1991); *Hudson River Rafting Co. v. Niagara Mohawk Power Corp.,* 148 A.D.2d 856, 539 N.Y.S.2d 130, 131 (N.Y.A.D. 3 Dept.1989).

Pennsylvania:

"An issue is not actually litigated if the defendant might have interposed it as an affirmative defense, but fails to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by failure to deny); nor is it actually litigated if it is the subject of a stipulation between the parties. See Restatement Second, Judgments, § 68, comment e. If the defendant fails to plead or otherwise defend, nothing is put in issue, save possibly the facts needed to give the court jurisdiction over the subject matter. No other matter or point, then, becomes binding on the parties in later actions upon different claims." *Lebeau v. Lebeau,* 258 Pa.Super. 519, 393 A.2d 480, 483–484 (1978). See also *Fleet Consumer Discount Co. v. Graves (In re Graves),* 33 F.3d 242, 248 (3rd Cir.1994)(construing Pennsylvania law); *Martin v. Poole,* 232 Pa.Super. 263, 336 A.2d 363, 367 (1975); *GPU Indus. Intervenors v. Pennsylvania Public Utility Comm'n,* 156 Pa.Cmwlth. 626, 628 A.2d 1187, 1193 (1993).

Rhode Island:

"In actuality, Zalobowski's first civil action resulted in a default judgment against the fund for monthly payments that had accrued as of the date of the filing of the suit. Zalobowski's entitlement to pension credits claimed during his period of self-employment was never actually litigated. Thus, the fund, because of the installment nature of its contract with Zalobowski, was barred neither by res judicata nor by the related doctrine of collateral estoppel from litigating this particular issue." *Zalobowski v. New England Teamsters and Trucking Indus. Pension Fund,* 122 R.I. 609, 410 A.2d 436, 438 (1980)

Utah:

"Where an action is brought against the defendant and although he is duly served with process he fails to appear or answer, and judgment by default is rendered against him, the judgment is conclusive as to the cause of action upon which the action was based. But in a subsequent suit based upon a different cause of action the judgment is not conclusive as to the truth of the allegations in the plaintiff's complaint...." *Gossner v. Dairymen Assocs., Inc.,* 611 P.2d 713, (Utah 1980)(quoting Restatement, Judgments, § 68, Comment f., p. 302.). *See also State v. Ruscetta,* 742 P.2d 114, 116 (Utah.Ct.App.1987)

West Virginia:

"Ample authority exists for the proposition that a default judgment has no collateral estoppel effect." *Christian v. Sizemore,* 185 W.Va. 409, 407 S.E.2d 715, 720 (1991).

Wisconsin:

"According to Restatement (Second) of Judgments sec. 27 comment e, at 257 (1980): 'In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, [the issue preclusion rule] does not apply with respect to any issue in a subsequent action.' But that exception is flexible: '[E]ven if [an issue] is not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate.' *Id.* at 256." *Heggy v. Grutzner,* 156 Wis.2d 186, 456 N.W.2d 845, 849 (App.1990).

"In Heggy we held that the plaintiff, Heggy, was collaterally estopped from challenging findings of fact made adversely to him in a previous action in which he had defaulted. However, in so doing we recognized that as a general rule the collateral estoppel doctrine does not apply to default judgments. It was only the extreme circumstances that justified our exception to the rule in Heggy's case." *Fox v. Pretasky,* 174 Wis.2d 602, 501 N.W.2d 471 (Table), 1993 WL 96909 *1 (Wis.Ct.App., Feb.11, 1993.)(Unpublished Disposition).

WL 137634 (E.D.La., March 25, 1996)(Louisiana judgment); *White v. Rogers (In re Rogers)*, 1993 WL 610730 (M.D.Tenn., Dec.10, 1993) aff'd, 57 F.3d 1070, 1995 WL 364154 (6th Cir. June 16, 1995)(Tennessee judgment); *Green v. Kennedy (In re Green)*, 198 B.R. 564 (9th Cir. BAP 1996)(California judgment); *Nourbakhsh v. Gayden (In re Nourbakhsh)*, 162 B.R. 841 (9th Cir. BAP 1994); *League v. Graham (In re Graham)*, 191 B.R. 489 (Bankr.N.D.Ga.1996)(Georgia judgment); *Ford v. Ford (In re Ford)*, 191 B.R. 233 (Bankr.M.D.Fla.1995)(West Virginia judgment); *Newsom v. Moore (In re Moore)*, 186 B.R. 962 (Bankr.N.D.Cal.1995)(California judgment); *North Tel. Inc. v. Brandl (In re Brandl)*, 179 B.R. 620 (Bankr.D.Minn.1995)(Minnesota judgment); *Spartz v. Cornell (In re Cornell)*, 178 B.R. 45 (Bankr.D.Conn.1995)(Connecticut judgment); *Walters v. Betts (In re Betts)*, 174 B.R. 636 (Bankr.N.D.Ga.1994)(Georgia judgment); *Stokes v. Vierra (In re Vierra)*, 173 B.R. 417 (Bankr.N.D.Cal.1994)(South Carolina), *rev'd*, 185 B.R. 341 (N.D.Cal.1995); *Frantz v. Schuster (In re Schuster)*, 171 B.R. 807 (Bankr.E.D.Mich.1994)(Michigan judgment); *Dunn v. Davis (In re Davis)*, 168 B.R. 189 (Bankr.W.D.Ark.1994)(Arkansas judgment); *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 163 B.R. 302 (Bankr.M.D.Tenn. 1994) *aff'd*, 65 F.3d 51 (6th Cir.1995)(Tennessee judgment); *Seay v. Greene (In re Greene)*, 150 B.R. 282 (Bankr.S.D.Fla.1993)(Florida judgment); *Fairway Golfview Homes, Inc. v. Kecskes (In re Kecskes)*, 136 B.R. 578 (Bankr.S.D.Fla.1992)(Florida judgment); *Maximus Inter'l Trading Corp. v. Arguez (In re Arguez)*, 134 B.R. 55 (Bankr.S.D.Fla.1991)(Florida judgment); *Florida Municipal Self Ins. Fund v. Heuser (In re Heuser)*, 127 B.R. 895 (Bankr.N.D.Fla.1991 )(Florida judgment); *Fixel v. Marsowicz (In re Marsowicz)*, 120 B.R. 602 (Bankr.S.D.Fla.1990)(Florida judgment); *Illinois Dept. of Employment Security v. Winston (In re Winston)*, 114 B.R. 566 (Bankr.N.D.Ill.1990)(Illinois judgment); *Perino v. Cohen (In re Cohen)*, 92 B.R. 54 (Bankr.S.D.N.Y.1988)(New York administrative judge determination); *Bend v. Eadie (In re Eadie)*, 51 B.R. 890 (Bankr.E.D.Mich.1985)(Michigan judgment); *Harris v. Byard (In re Byard)*, 47 B.R. 700 (Bankr.M.D.Tenn.1985)(Kansas judgment).[29]

But even in these cases that appear to be in conflict with the majority, they are not. A close analysis explains. The interpretations adopted by these courts generally focused on whether the party against whom the prior default judgment was being asserted had a fair "opportunity to litigate" the issues in the

---

**29.** According to the interpretations of those courts, the state law in Florida, Tennessee, California, Minnesota, Connecticut, South Carolina, Michigan, Arkansas, Illinois, Kansas, Louisiana, Georgia, West Virginia and New York, at least under the circumstances presented in those cases, affords collateral estoppel effect to default judgments rendered by the courts of those states.

The language in decisions of courts in Georgia, Hawaii, Michigan, Minnesota and Oregon indicates that courts of those states would probably not hold that a judgment has no collateral estoppel simply because it was rendered by default.
Georgia:
"A judgment by *default* properly entered against parties sui juris operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. Conclusions of law, and facts not well pleaded and forced inferences are not admitted by a *default* judgment." *American States Ins. Co. v. Walker*, 223 Ga.App. 194, 477 S.E.2d 360, 362 (1996).
Hawaii:

"[A] *default* judgment is a final judgment to which collateral *estoppel* applies", *Medeiros v. First Ins. Co.*, 50 Haw. 401, 403, 441 P.2d 341, 344 (1968), unless the *default* judgment is void. *Fuller v. Pacific Medical Collections, Inc.*, 78 Hawai'i 213, 891 P.2d 300, 306 (App.1995).
Michigan:
A default judgment will also be given collateral estoppel effect in a subsequent suit between the parties arising out of the same transaction or occurrence. *Braxton v. Litchalk*, 55 Mich. App. 708, 223 N.W.2d 316, 319 (1974).
Minnesota:
"They continue, however, to explain a contrary rule in Minnesota where a default judgment is not only res judicata to another action on the same claim but collateral estoppel as to those issues pleaded in the complaint." *Roberts v. Flanagan*, 410 N.W.2d 884, 887 (Minn.Ct.App. 1987).
Oregon:
"The doctrine of res judicata, including collateral estoppel, as to matters essential to the judgment, applies to judgments by default." *Gwynn v. Wilhelm*, 226 Or. 606, 360 P.2d 312, (1961).

previous case, rather than whether the judgment was based on any real or actual litigation, and most involve either one or more of the following conditions: (a) the debtor substantially participated in the state court proceeding prior to entry of the default judgment; (b) the default judgment was rendered against the debtor for opprobrious conduct in the state court proceeding, such as failure to cooperate in discovery; (c) the default judgment was rendered by the state court based on the presentation of fairly extensive evidence rather than a procedural default on the part of the debtor; (d) the bankruptcy court, for one reason or another, determined that the judgment could, nevertheless, not be accorded collateral estoppel effect.[30] Hence,

**30.** A closer analysis of the above-cited cases supports this conclusion. In *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51 (6th Cir.1995), the court held that a Tennessee judgment based on a jury verdict rendered after a trial which the debtor did not attend after participating in the litigation for over a year could be accorded collateral estoppel effect. The state court specifically instructed the jury on fraud and that punitive damages could only be awarded if defendant acted intentionally, fraudulently, maliciously or recklessly. *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 163 B.R. 302 (Bankr.M.D.Tenn.1994). The statements made by the *Rally Hill* panel of the Court of Appeals for the Sixth Circuit regarding Tennessee issue preclusion law as it relates to default judgments are dicta and the court declined to directly confront *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981), in which another panel of the court had held that, as a matter of federal bankruptcy law, state court default judgments may not be accorded collateral estoppel effect in bankruptcy dischargeability proceedings. The *Rally Hill* court stated:

It is apparent that the Supreme Court's opinions in cases such as Migra and Marrese call into question the rigid rule set out in Spilman. However, under the circumstances of this case, we are not required to determine the extent to which the Spilman rule may have been overruled. That is, we need not address the question of whether a true default judgment, e.g., where the defendant does not file an answer, has collateral estoppel effect in a later bankruptcy proceeding. The state-court judgment at issue here is not a default judgment as contemplated by the Spilman court. Indeed, the attributes listed by Spilman as conditions for a judgment having preclusive effect are present in this case.

⋅ ⋅ ⋅ ⋅ ⋅

Whether or not any federal policy requires an exception to the normal operation of § 1738 in the case of a true default judgment, no provision of federal law requires an exception in circumstances such as those present here. The fraud issue was raised, actually litigated, and necessary to the judgment in state court. Accordingly, the bankruptcy court properly held that Bursack's mere failure to appear at trial does not alter the preclusive effect of the state court judgment.

65 F.3d at 54–55.

In an unpublished opinion, another panel of the Court of Appeals for the Sixth Circuit in

*White v. Rogers (In re Rogers)*, 57 F.3d 1070, 1995 WL 364154 (6th Cir. Tenn., June 16, 1995) affirmed the bankruptcy court's and district court's determination that a state court default judgment rendered after the state court heard testimony and made specific findings of malice collaterally estopped the debtor from litigating the dischargeability of the debt underlying the judgment. The bankruptcy court's finding of nondischargeability was based also on a criminal conviction of the debtor by a state court jury. "However, the Bankruptcy Judge further relied upon the preclusive effect of the thoroughly litigated criminal finding of malicious shooting." *White v. Rogers (In re Rogers)*, 1993 WL 610730 *1 (M.D.Tenn., Dec.10, 1993). The *Rogers* panel of the Court of Appeals for the Sixth Circuit, like the panel in *Bursack*, found that under Tennessee law a default judgment could be accorded collateral estoppel effect but once again stopped short of suggesting that *Spilman* was obsolete. "Because a Tennessee court would give preclusive effect to the default judgment *in this case*, and no federal policy creates an exception to the normal rules of full faith and credit *in this case*, the bankruptcy court was obligated to give preclusive effect to the default judgment." 1995 WL 364154 at **2 (emphasis added).

In *Right Up Your Alley, Inc. v. Dorand*, 1996 WL 46715 (E.D.La., Feb.6, 1996), the court held that a preliminary Louisiana default fraud judgment confirmed after a hearing in which the state court heard testimony and took documentary evidence could be accorded collateral estoppel effect since, under Louisiana law, a default judgment must be confirmed by evidence sufficient to establish a prima facie case. The court, however, refused to accord collateral estoppel effect to the judgment because it contained no findings of fact on the issue of reliance and the plaintiff was unable to produce a transcript of the hearing to show that the issue of reliance was actually considered by the state court.

In *Ford v. Ford (In re Ford)*, 191 B.R. 233 (Bankr.M.D.Fla.1995), the bankruptcy court determined that, under West Virginia law, the default judgment involved in that case could be accorded collateral estoppel effect, however, the judgment involved in *Ford* was not a true default judgment. The judgment was rendered as a penalty for failure of the debtor to appear for a deposition in a state court case that had been pending for two years.

The court in *Walters v. Betts (In re Betts)*, 174 B.R. 636 (Bankr.N.D.Ga.1994) held that a Geor-

gia state administrative law judge workmen's compensation decree based on an extensive presentation of evidence at a hearing could be accorded collateral estoppel effect, even though the debtor did not attend the hearing where the debtor had participated in the litigation up until the hearing. The court, however, refused to accord collateral estoppel effect to the decree because it contained no specific findings regarding the defendant's intent or state of mind.

The court in *Perino v. Cohen (In re Cohen)*, 92 B.R. 54 (Bankr.S.D.N.Y.1988) held that the decree of a New York administrative judge rendered after an administrative hearing which the debtor did not attend could be accorded collateral estoppel effect where the administrative judge heard testimony from the plaintiff and made findings of fact. The court, however, refused to accord collateral estoppel effect to the decree because the debtor's failure to appear and defend did not result from a refusal to participate but from an inability to participate.

In *Green v. Kennedy (In re Green)*, 198 B.R. 564 (9th Cir. BAP (Cal.) 1996), the Bankruptcy Appellate Panel held that a California penalty default judgment rendered for failure to comply with discovery after the case had been pending in state court for 5 years could be accorded collateral estoppel effect in a bankruptcy dischargeability proceeding. The judgment recited that it was entered after taking evidence.

In *League v. Graham (In re Graham)*, 191 B.R. 489 (Bankr.N.D.Ga.1996), the bankruptcy court granted relief from the automatic stay to allow the dischargeability of a debt to be determined in Georgia state court. Thereafter, the debtor answered the plaintiff's complaint and participated in discovery. Ultimately the debtor abandoned the defense of the lawsuit and a default judgment was rendered against him by the state court. The bankruptcy court found that the debtor's own willfulness and obstructionism prevented him from arguing the case to completion in the state court and that the default judgment rendered by the state court after relief from the stay had been granted therefore collaterally estopped the debtor from further litigating issues regarding the dischargeability of the resulting debt.

In *Stokes v. Vierra (In re Vierra)*, 173 B.R. 417 (Bankr.N.D.Cal.1994), *rev'd*, 185 B.R. 341 (N.D.Cal.1995) the Court held that a penalty default judgment rendered by a South Carolina court must be accorded collateral estoppel effect. In so doing, the court reluctantly followed the Bankruptcy Appellate Panel's decision in *Nourbakhsh v. Gayden (In re Nourbakhsh)*, 162 B.R. 841 (9th Cir. BAP 1994), but made it clear that absent the requirements of stare decisis, it would, based on *Brown*, have found that a state court default judgment does not collaterally estop the litigation of dischargeability issues in the bankruptcy court. The court stated:

This court has no problem finding that it is precluded from hearing the case where there has been a full trial on the merits in state court. However, it chafes at the idea that a default judgment in state court precludes a trial on the merits in bankruptcy court. State court litigants lose by default for too many reasons having nothing to do with wrongful conduct, including simple inability to afford to respond or to comply with discovery requests.

Unfortunately, the Appellate Panel in *In re Nourbakhsh*, 162 B.R. 841 (9th Cir.BAP1994), in a 2–1 decision, held that default findings precluded litigation on the merits where state collateral estoppel law gives preclusive effect to default judgments. This court believes that the dissent is correct and the majority opinion is wrong in that case. The decision sorely test's this court's devotion to stare decisis and the belief that appellate panel decisions are binding.

*Id.* at 418.

The bankruptcy court in *Frantz v. Schuster (In re Schuster)*, 171 B.R. 807 (Bankr.E.D.Mich. 1994) determined that under Michigan law, a default judgment may be accorded collateral estoppel effect. The state court default judgment involved in that case, however, was rendered after a bench trial, which the debtor elected not to attend, where the state court heard testimony and specifically found that the debtor had been guilty of intentional and wanton conduct. Also, the bankruptcy court, in making its nondischargeability determination, considered the debtor's criminal conviction which occurred prior to the state court default judgment. The court explained:

The Bankruptcy Court is mandated to look at the entire state court record including affidavits, deposition testimony, state court judgment, criminal conviction and failure to appeal, in assessing whether the matter has been actually litigated. The court must also inquire as to whether the state trial court had competent testimony before it upon which to grant a default judgment.

*Id.* at 812.

In *Dunn v. Davis (In re Davis)*, 168 B.R. 189 (Bankr.W.D.Ark.1994), the bankruptcy court determined that Arkansas law would accord collateral estoppel effect to the default judgments of Arkansas state courts. However, in that case, the judgment was entered by the state court after a full trial on the damages issues "which, under Arkansas law, necessarily required proof of malice." *Id.* at 193. The bankruptcy court also considered the fact that the debtor had been convicted by a state criminal court jury.

The bankruptcy court in *Seay v. Greene (In re Greene)*, 150 B.R. 282 (Bankr.S.D.Fla.1993) held that, in a state court lawsuit that had been litigated for over a year, in which the debtor had answered the plaintiff's complaint and the state court had heard and denied the plaintiff's summary judgment motion, a default judgment on liability for failure of the debtor to appear at trial, collaterally estopped the litigation of issues in a bankruptcy dischargeability proceeding, where the issue of damages was tried before a jury. The same bankruptcy court, in *Fairway Golfview Homes, Inc. v. Kecskes (In re Kecskes)*, 136 B.R. 578 (Bankr.S.D.Fla.1992), determined

most of these cases did not offer the courts opportunities to consider the factors that have led other courts to recognize an exception to full faith and credit, but they do highlight the many different results that may occur if state law is applied to bankruptcy dischargeability proceedings.

Deciphering state law and applying that law to an issue unfamiliar to state courts is difficult. There is the possibility of misinterpretation in the absence of clear state authority and there is even the possibility of misinterpretation in the presence of seemingly clear state authority, which is in actuality not so clear.[31] And even if a state's law of issue preclusion law is clear, and is applied by a bankruptcy court to default judgments in bankruptcy dischargeability matters, subsequent pronouncements by the courts of a state may prove the bankruptcy's court's guess to be wrong, or may clarify state law in a manner that will require the bankruptcy court to reach a different conclusion as to judgments rendered by courts of the same state in subsequent cases.[32] Other cases demonstrate similar problems.

In *Ford v. Ford (In re Ford)*, 191 B.R. 233 (Bankr.M.D.Fla.1995) the court found that a particular West Virginia default judgment could not be accorded collateral estoppel ef-

that a non-default judgment rendered by a Florida court after an evidentiary hearing held at which the plaintiff provided testimony and evidence would be accorded collateral estoppel effect. The court, in dicta, stated that Florida default judgments may be accorded collateral estoppel effect.

In *Maximus Inter'l Trading Corp. v. Arguez (In re Arguez)*, 134 B.R. 55 (Bankr.S.D. Fla. 1991), the bankruptcy court held that, where the state court, after entry of a default against the debtor, conducted a bench trial on the issue of damages, at which the court heard extensive testimony, the resulting judgment could be accorded collateral estoppel effect. "[D]espite the entry of a default as to liablity against the Debtors, [the plaintif] put on its entire case." *Id.* at 57. The same bankruptcy court, in *Fixel v. Marsowicz (In re Marsowicz)*, 120 B.R. 602 (Bankr.S.D.Fla.1990) held that a Florida default judgment would be given collateral estoppel effect, where after default was entered, a jury trial was conducted on the issue of damages.

In *Illinois Dept. of Employment Security v. Winston (In re Winston)*, 114 B.R. 566 (Bankr. N.D.Ill.1990), the bankruptcy court held that an Illinois administrative decision regarding the debtor's fraud in obtaining unemployment benefits, rendered after a hearing, could be accorded collateral estoppel effect, even though the debtor did not attend the hearing, where the decision encompassed findings of fact that were supported by unemployment insurance records and earnings information filed by debtor's employer. "Because the Debtor certified each week she was not employed and not earning any wages, the intent to deceive element could be inferred, notwithstanding the Debtor's failure to appear and defend at the administrative level." *Id.* at 570. The bankruptcy court also had as evidence an agreed judgment entered in the state court for the amount of benefits found owed by the administrative board.

The bankruptcy court in *Bend v. Eadie (In re Eadie)*, 51 B.R. 890 (Bankr.E.D.Mich.1985) held that a Michigan default judgment could be accorded collateral estoppel effect. The state court judgment involved in that case, however, was a penalty default rendered as a discovery sanction after the debtor failed to attend two deposition settings.

**31.** Compare *Brose v. Hubbard (In re Hubbard)*, 167 B.R. 969 (Bankr.D.N.M.1994)(holding that under Oregon law, default judgments may not be accorded collateral estoppel effect) with *Gwynn v. Wilhelm*, 226 Or. 606, 360 P.2d 312, 313 (1961)("The doctrine of res judicata, including collateral estoppel, as to matters essential to the judgment, applies to judgments by default.").

**32.** Often, the result obtained after attempting to decipher state issue preclusion law will be uncertain at best. In the Eleventh Circuit, bankruptcy courts which can find no definite authority under state law are not at liberty to determine the issue preclusive effect of state court default judgments based on speculation, guess work or "uncertain analogy," *Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 760 (11th Cir.1996), but instead, must certify the question to the state supreme court. As stated by the court in *Forgione*:

When substantial doubt exists about the answer to a material state law question upon which the case turns, a federal court should certify that question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law. *See, e.g., Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir.1995). "Only through certification can federal courts get definitive answers to unsettled state law questions. Only a state supreme court can provide what we can be assured are 'correct' answers to state law questions, because a state's highest court is the one true and final arbiter of state law." *Sultenfuss v. Snow*, 35 F.3d 1494, 1504 (11th Cir.1994) (en banc) (Canes, J., dissenting), cert. denied, 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 134 (1995).

*Id.* at 761.

fect because it contained insufficient findings of fact to satisfy the elements of Section 523(a)(6). In making that determination, the court intimated that, under West Virginia law, West Virginia courts would accord collateral estoppel effect to West Virginia default judgments. The Court wrote:

> Collateral estoppel, or issue preclusion bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a *"full and fair opportunity to litigate"* that issue in an earlier case.
>
> . . . . .
>
> This Court is satisfied that while the litigation in West Virginia was proceeded to conclusion by default albeit the Court received testimony the Debtor had an *opportunity to litigate* her claim in this instance to defend against the claims asserted against her and the issue concerning her conduct was decided on the merits of a claim.

*Id.* at 237 (citations omitted and emphasis added).

The above position appears to be in conflict with the West Virginia state court decision of *Christian v. Sizemore,* 185 W.Va. 409, 407 S.E.2d 715 (W.Va.1991). In that case, the West Virginia Supreme Court held that a default judgment rendered against a policyholder in a declaratory judgment action brought by his insurer to determine the issue of insurance coverage relating to an automobile accident did not collaterally estop the policyholder's passenger, injured in the accident, from litigating the issue of insurance coverage in a declaratory judgment action subsequently brought by the passenger against the insurance carrier to determine whether there was policy coverage.

However, the appearance of conflict is misleading. The judgment involved in *Ford* was not a true default judgment, but was rendered for failure of the debtor to appear for a deposition in a case that had been pending for two years. The state court had heard testimony from four witness before rendering the judgment; consequently, the judgment may have been accorded collateral es-

toppel effect even under the more stringent federal test. The difficulties facing bankruptcy courts are, however, obvious as this case demonstrates.

In *Spartz v. Cornell (In re Cornell),* 178 B.R. 45 (Bankr.D.Conn.1995), the bankruptcy court held that, under Connecticut law, Connecticut courts would accord collateral estoppel effect to default judgments rendered by Connecticut courts. The court based that determination on "full and fair opportunity to litigate" language found in the case of *Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 627 A.2d 374 (1993), stating:

> Applying this statement of Connecticut collateral estoppel law to the proceeding at bar, it appears that the issue of fraud was "actually litigated" in the state-court proceedings, notwithstanding the default judgment. The plaintiff properly raised the issue of fraud and submitted it for determination. The issue after hearing was, in fact, determined, and was necessary to the judgment. Although the debtor did not appear in the state proceeding, he was aware of the proceeding, and not precluded by distance, accident or mistake from appearing. He was afforded an adequate opportunity to litigate, and chose not to. Thus, I conclude that under Connecticut preclusion law the debtor would be collaterally estopped from relitigating the issue of fraud in a subsequent action in a state court.

178 B.R. at 49.

The probability that courts could disagree on this matter is very real considering that the *Jackson* court recognized that its holding represented a retreat from language in a previous case. That case, *Slattery v. Maykut,* 176 Conn. 147, 405 A.2d 76 (1978), was rendered prior to the adoption of Restatement § 27 in 1980 and may be interpreted to require that default judgments be given collateral estoppel effect. 627 A.2d at 379 n. 6. In addition, the court tempered its holding in *Jackson* with the caveat that the doctrine of issue preclusion should remain flexible, and that in limited circumstances, it may be appropriate for a default judgment to be given collateral estoppel effect. "Although not every default judgment should have the same

issue preclusive effect as an actual adjudication between the present parties, in the interest of judicial economy and repose for litigants, we envision *some* circumstances where it would be appropriate to give issue preclusive effect to a default judgment." 627 A.2d at 379 (emphasis added). See also, *Walker v. Richardson*, 1996 WL 278326 (Conn.Super. May 7, 1996); *Numberg v. Twaite*, 1994 WL 146038 (Conn.Super. April 15, 1994); *Yellow Freight Sys., Inc. v. Spinnetta*, 1994 WL 133455 (Conn.Super., March 16, 1994).

In *Harris v. Byard (In re Byard)*, 47 B.R. 700 (Bankr.M.D.Tenn.1985), the Tennessee bankruptcy court was required to interpret the collateral estoppel effect of default judgments rendered by Kansas state courts but was faced with the fact that at the time no Kansas decision expressly addressed the issue of the collateral estoppel effect of a default judgment. The *Byard* court was, consequently, forced to extrapolate from other decisions rendered by the Supreme Court of Kansas.

In *Hildebrand v. Kugler (In re Kugler)*, 170 B.R. 291 (Bankr.E.D.Va.1994) the bankruptcy court held that, under Virginia law, Virginia courts would not accord collateral estoppel effect to default judgments rendered by Virginia courts. The court based that determination on the Supreme Court of Virginia's decision in *Snead v. Bendigo*, 240 Va. 399, 397 S.E.2d 849 (1990). In *Snead*, the court held that a default judgment rendered in favor of a physician in an action to collect fees did not collaterally estop the patient from subsequently bringing a malpractice action arising from on the same services rendered by the physician which formed the basis of the earlier collection action. "The requirement that an issue must have been the subject of actual rather than potential litigation is one of the features distinguishing collateral estoppel from res judicata." *Id.*, 397 S.E.2d at 850. "Because the issue of the physician's negligence was not actually litigated in the debt-collection case, the trial court erred in holding the malpractice case barred by collateral estoppel." *Id.* at 851.

Subsequent to *Snead*, the Virginia Supreme Court was again faced with issue of the collateral estoppel effect of a default

judgment in *Horton v. Morrison*, 248 Va. 304, 448 S.E.2d 629 (1994). In *Horton*, a collision occurred between automobiles operated by Morrison and Horton. Shaver was a passenger in Horton's car at the time. Both Horton and Shaver were injured in the collision, and, as a result, instituted personal injury actions against Morrison. Morrison filed a third-party complaint for contribution against Horton, alleging that Horton negligently operated her vehicle and was, therefore, liable to Morrison for all or part of any sum recovered by Shaver. A default judgment was entered on the third-party complaint against Horton, who did not file any responsive pleadings to the complaint. Morrison then moved to dismiss Horton's action against him, on the grounds that the default judgment rendered on the third-party complaint collaterally estopped Horton from contending that Morrison's negligence caused the accident. Relying on Snead, the court held that because the judgment on the third-party complaint was rendered by default, the issue of Morrison's negligence had not been actually litigated and, consequently, the judgment could not be accorded collateral estoppel effect. "The requirement that an issue must have been the subject of actual litigation, rather than potential litigation, is one of the features that distinguishes collateral estoppel from res judicata." 448 S.E.2d at 631 (quoting *Snead v. Bendigo*, 240 Va. 399, 397 S.E.2d 849, 850 (1990). "In the present case, the trial court rendered a default judgment in favor of Morrison in her third-party action against Horton, and no issues relating to Horton's negligence were actually litigated. Consequently, we hold that the default judgment cannot be the basis of Morrison's claim of collateral estoppel.") *Id.*

Making what appeared to be a safe decision, the bankruptcy court in *In re Wizard Software, Inc.*, 185 B.R. 512 (Bankr.E.D.Va. 1995), a case which did not involve a dischargeability proceeding, relied on *Horton* and held that under Virginia law, Virginia courts would not accord collateral estoppel effect to default judgments rendered by Virginia courts. After the bankruptcy courts in *Kugler* and *Wizard* decided cases based on *Snead* and *Horton*, the Supreme Court of

Virginia decided *Transdulles Center, Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274 (1996). In *Transdulles*, a landlord filed an unlawful detainer action against its tenant for recovery of the premises and accrued rent. The tenant was personally served but failed to appear or defend. The trial court entered a default judgment against the tenant after hearing testimony from the landlord's bookkeeper and reviewing exhibits presented by the landlord's attorney. The tenant ultimately satisfied the judgment. The landlord subsequently filed a second action against the tenant for breach of the lease, seeking damages for rent that accrued after the default judgment was entered in the unlawful detainer action. The landlord filed a motion for judgment, on the grounds that the previous default judgment collaterally estopped the tenant from litigating his liability on the lease. The trial court denied the motion, on the basis that "a default judgment does not actually litigate issues for the purposes of collateral estoppel." 472 S.E.2d at 275.

The Supreme Court of Virginia rejected the tenant's "contention that *Horton v. Morrison*, 248 Va. 304, 448 S.E.2d 629 (1994), established a blanket exemption in Virginia from application of collateral estoppel in the case of a default judgment," 472 S.E.2d at 276, and reversed the decision of the trial court. The court held that the default judgment should be accorded collateral estoppel effect, stating:

> In the present case, the tenant contends that a default judgment cannot be the basis for application of collateral estoppel in Virginia. Relying on the Restatement (Second) of Judgments § 27 cmt. e. (1982), and federal decisions, including *United States v. Ringley*, 750 F.Supp. 750 (W.D.Va.1990), aff'd, 985 F.2d 185 (4th Cir. 1993), the tenant argues that "an issue must have been the subject of actual litigation for collateral estoppel to apply." Ac-

cording to the tenant, nothing is actually litigated in a default judgment.

＊　　＊　　＊　　＊　　＊

We do not agree with the tenant's contention, nor do we agree with the view typified by the Restatement comment (in "the case of a judgment entered by ... default, none of the issues is actually litigated"). Virginia law does not support a blanket exemption from the application of collateral estoppel in the case of a default judgment.

＊　　＊　　＊　　＊　　＊

> First, the tenant's personal liability for rent and other charges, including attorney's fees, under the lease actually was litigated in the prior action. Testimonial and documentary evidence was presented ex parte in the district court hearing. The circuit court record established that proof was presented in the district court through a bookkeeper for the landlord and through the landlord's attorney, who presented the lease and other documents including an affidavit supporting the attorney's fees claimed. *We disagree with the tenant's argument that before an issue may be "actually litigated" in a court proceeding, the defendant must personally appear at the hearing and contest the matter.* Indeed, this Court has said that a final default judgment "imports absolute verity, and is as effectual and binding as if pronounced upon a trial upon the merits." *Neale v. Utz*, 75 Va. 480, 488 (1881).

472 S.E.2d at 275–276 (emphasis added).

The courts in *Kugler* and *Wizard* must have been surprised to find that their reliance on *Snead* and *Horton*, had been misplaced.[33] But of course, that is the risk all bankruptcy courts take when required to determine the effect of state law of issue preclusion on a unique issue of bankruptcy law

---

**33.** The courts in *Kugler* and *In re Wizard Software, Inc.* were not the only ones surprised. In *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), the Supreme Court determined that a criminal conviction for manufacturing a controlled substance based on a guilty plea entered by plaintiff in Virginia state court did not collaterally estop the plaintiff from bringing an action for damages under Section 1983 against police officers who participated in a search of his apartment. The court based that decision on a determination that Virginia courts would not give collateral estoppel effect to the guilty plea because the legality of the search was not actually litigated in the criminal proceedings. "Indeed, no issue was actually litigated in the state proceeding since Prosise declined to contest his guilt in any way." *Id.* at 316, 103 S.Ct. at 2374.

that has never been nor will ever be addressed by state courts (because as is now the case, jurisdiction over the subject matter of such suits resides exclusively with the bankruptcy court).

**(c) The "state law" approach, when applied to default judgments, produces inconsistent results for similarly situated debtors**

Bankruptcy courts from the same districts often formulate conflicting interpretations of the same state law. That occurrence has produced, and will continue to produce, inconsistency of results in an area in which Congress intended consistency.

If default judgments are dependent on state law, or the interpretation of state law given by a particular bankruptcy court, those judgments will be given collateral estoppel effect in some states and, on that basis,

rendered nondischargeable, without litigation in the bankruptcy court, whereas, default judgments rendered in other states will not be accorded collateral estoppel effect.

If bankruptcy courts disagree on interpretation of the law of a particular state as it pertains to the collateral estoppel effect to be accorded a default judgment rendered by the courts of that state, then some bankruptcy courts may accord collateral estoppel effect to the default judgments rendered by the courts of that state, while other bankruptcy courts may refuse to accord collateral estoppel effect to the default judgments rendered by the courts of that state.

The possibility of the above-described problem is real when consideration is given to the fact that courts of the same district often adopt conflicting interpretations of the same state law.[34] For example, in *Stokes v.*

---

**34.** The courts in *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798 (9th Cir.1995); *Nourbakhsh v. Gayden (In re Nourbakhsh)*, 162 B.R. 841 (9th Cir. BAP 1994); *Fairway Golfview Homes, Inc. v. Kecskes (In re Kecskes)*, 136 B.R. 578 (Bankr.S.D.Fla.1992); *Florida Municipal Self Ins. Fund v. Heuser (In re Heuser)*, 127 B.R. 895 (Bankr.N.D.Fla.1991); *Fixel v. Marsowicz (In re Marsowicz)*, 120 B.R. 602 (Bankr.S.D.Fla. 1990) all determined that Florida law accords collateral effect to Florida default judgments. Judge Barry Russell, in his dissenting opinion in *Nourbakhsh v. Gayden (In re Nourbakhsh)*, 162 B.R. 841 (9th Cir. BAP 1994), questioned those conclusions. He wrote:

I am not fully convinced that the majority is correct to conclude that the Florida law of collateral estoppel bars future litigation of issues raised in a default judgment. The majority cites cases which either do not provide binding interpretations of Florida law, or only offer dicta, not holdings, to support its view. For example, while it might be persuasive to a Florida state court, *In re Seifert*, 130 B.R. 607 (Bankr.M.D.Fla.1991), does not bind a state court in matters of purely Florida law. See, e.g., *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Nor does *Seifert* rely on any Florida case law. The other case cited by the majority, *In re Marsowicz*, 120 B.R. 602 (Bankr.S.D.Fla.1990), does rely on Florida cases, e.g., *Perez v. Rodriguez*, 349 So.2d 826 (Fla.Dist.Ct.App.1977); *Baum v. Pines Realty, Inc.*, 164 So.2d 517 (Fla.Dist.Ct. App.1964), but those cases only support the majority's view in dicta. *Perez*, for example, held that an issue was not precluded from litigation in a subsequent lawsuit between the parties. Thus, the holding of *Perez* offers no

direct support for the majority's conclusion. It is true that *Perez*, citing another Florida case, mentions in dicta that an earlier "default judgment conclusively establishes [in a subsequent action] ... the truth of all material allegations contained in the complaint in the [earlier default judgment] and every fact necessary to uphold the [earlier] default judgment." *Perez*, 349 So.2d at 827 (citing *Baum*, 164 So.2d at 522). But, like *Perez*, *Baum* is a case which held that collateral estoppel did not bar litigation of an issue between the parties in a subsequent lawsuit. Thus, neither *Baum* nor *Perez* directly hold for the majority's view. Admittedly, these courts suggest, but do not hold, that were the issue before them, they would apply collateral estoppel to default judgments. But, given the variety of opinions non-Florida courts have about this question, compare, e.g., *Matter of Cassidy*, 892 F.2d 637 (7th Cir.), cert. denied, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990) and *In re Dvorak*, 118 B.R. 619 (Bankr.N.D.Ill.1990) and *In re Sharp*, 119 B.R. 779 (Bankr.D.Idaho 1990) with *In re Stowell*, 102 B.R. 589 (Bankr.W.D.Tex.1989) and *In re Bennett*, 80 B.R. 800 (Bankr.E.D.Va. 1988), I cannot assume, without more direct authority, that this debatable question is entirely settled. The closest a Florida court has come to squarely addressing this question is *Masciarelli v. Maco Supply Corp.*, 224 So.2d 329 (Fla.1969). *Masciarelli* purports to apply "estoppel by judgment," a synonym for collateral estoppel, to a default judgment. However, the true basis for the court's holding may have been res judicata. *Masciarelli* relies for its holding on *Avant v. Hammond Jones Inc.*, 79 So.2d 423 (Fla.1955), a case which enunciates a collateral estoppel analysis, but defines collateral estoppel in terms of res judicata. For

*Vierra (In re Vierra)*, 173 B.R. 417 (Bankr. N.D.Cal.1994), the bankruptcy court determined that, under South Carolina law, a default judgment must be accorded collateral estoppel effect. On appeal, the district court disagreed in *Stokes v. Vierra*, 185 B.R. 341 (N.D.Cal.1995), and, although noting that South Carolina law is less than clear on the subject, decided that, under South Carolina law, even a penalty default judgment rendered as a discovery sanction could not be accorded collateral estoppel effect.

The court in *Fincher v. Holt (In re Holt)*, 173 B.R. 806 (Bankr.M.D.Ga.1994) determined that, under Georgia law, a default judgment should ordinarily not be accorded collateral estoppel effect. The bankruptcy courts in *League v. Graham (In re Graham)*, 191 B.R. 489 (Bankr.N.D.Ga.1996) and *Walters v. Betts (In re Betts)*, 174 B.R. 636 (Bankr.N.D.Ga.1994) reached the opposite conclusion and held that Georgia law requires that default judgments be accorded collateral estoppel effect.

In *Perino v. Cohen (In re Cohen)*, 92 B.R. 54 (Bankr.S.D.N.Y.1988), the court determined that, under New York law, New York courts would accord collateral estoppel effect to default judgments. However, in *In re Townview Nursing Home*, 28 B.R. 431 (Bankr.S.D.N.Y.1983), which is not a dischargeability case, the court opined that New York law does not accord collateral estoppel effect to default judgments.

In *Illinois Dept. of Employment Security v. Winston (In re Winston)*, 114 B.R. 566 (Bankr.N.D.Ill.1990), the court determined that, under Illinois law, a default judgment must be accorded collateral estoppel effect. However, the court in *Meyer v. Asbury (In re Asbury)*, 195 B.R. 412 (Bankr.E.D.Mo. 1996). "found no Illinois cases which have decided whether a default judgment satisfies the 'actually litigated' requirement under Illinois law." *Id.* at 416.[35]

When two debtors, both of whom have had a default judgment rendered against them by courts of the same state, are treated differently in bankruptcy, with one receiving a discharge of the debt represented by the judgment, absent independent proof of nondischargeability, and the other not receiving a discharge of the debt represented by the judgment, based solely on proof of the default judgment, fundamental equity is jeopardized.[36]

**(d) Why *Maresse* was not intended to be applied to bankruptcy dischargeability matters**

*Marrese* was not intended to be applied to bankruptcy dischargeability matters or to undermine *Brown*, at least in situations where the considerations which prompted the court's decision in *Brown* are present. *Marrese* was not a bankruptcy case and did not involve either a default judgment or collateral estoppel.[37] The circumstances addressed in *Brown* were not present in *Marrese* but are present in this case. Furthermore, as indicated in the preceding paragraphs, practical difficulties preclude the ready application of the principles reiterated in *Marrese* to bankruptcy dischargeability matters. That fact, coupled with the Supreme Court's express reference to *Brown* as the rare exception to full faith and credit, points to the

example, the *Avant* court applies the "opportunity to litigate" standard, the hallmark of res judicata, in order to arrive at its conclusion that a certain claim is barred. "We conclude that the appellant was estopped to maintain an action in trover [the claim raised in a later lawsuit] when he had had abundant opportunity to isolate for adjudication the claim he now makes...." *Id.* at 424. This res judicata case, belies the Court's stated application of "estoppel by judgment." To the extent *Avant* is truly a res judicata case, it suggests that *Masciarelli* too is a res judicata case mislabeled as a case about collateral estoppel. If so, then there is no Florida authority directly on point about the collateral estoppel effect of default judgments.

*Nourbakhsh*, 162 B.R. at 848 n. 2.

**35.** There may be subtle nuances in the above-cited cases that would explain the different decisions but they are nonetheless indicative of the general problem facing bankruptcy courts.

**36.** Of equal importance, forum shopping is fostered.

**37.** "The Supreme Court cases of *Krémer, Migra, Marrese* and *Parsons Steel*, since they focus on claim preclusion and not issue preclusion and do not involve bankruptcy cases, would appear to have little applicability to dischargeability proceedings...." *Shafer v. Wintrow (In re Wintrow)*, 57 B.R. 695, 701 (Bankr.S.D.Ohio 1986).

conclusion that *Brown*, and not *Marrese*, should be applied in dischargeability proceedings, at least where the state court judgment did not result from the actual litigation of issues in the state court. This point is supported by the Supreme Court's decision in *Matsushita*, where the Court once again singled out *Brown* as an exception to full faith and credit.

*Marrese* involved res judicata, not collateral estoppel. How, therefore, can *Marrese* be said to pretermit *Brown* as to collateral estoppel but not res judicata? Every state accords res judicata effect to simple default judgments. If *Marrese* precludes the application of *Brown* in the area of collateral estoppel, then why would *Brown* have any room for operation after *Marrese* in the area of res judicata, since *Marrese* is specifically a res judicata case and directs federal courts to apply state law of res judicata when dealing with state court judgments. Bankruptcy courts, however, have not been so bold as to discard *Brown* when the issue is res judicata. To argue that *Brown* has no application to bankruptcy dischargeability issues because claim preclusion, and not issue preclusion, was involved in *Brown* begs the question, if *Brown* has no application to collateral estoppel, then why does *Marrese*.

*Brown* is an exception to full faith and credit under 28 U.S.C. § 1738 in the area of res judicata.[38] Why then don't the principles and considerations which led to the Supreme Court's decision in *Brown* also mandate a similar exception in the area of collateral estoppel when nothing was actually litigated by the state court tribunal? When a simple default judgment is involved, res judicata and collateral estoppel are, in effect, the same and produce the same results.

### (e) Why the "state law" approach defeats the express intent of Congress and the Supreme Court

In state court, with some exceptions, there is some certainty that debtors who have adequate funds to mount defenses will not decline to do so and thus allow default judgments to be rendered against them. Under the State Law Test, in a state in which state law accords collateral estoppel effect to a true default judgement, an inability to afford a defense in the state court proceeding and the fortuitous timing of a lawsuit could dictate the dischargeability of a particular debt, rather than the actual conduct of the debtor which gave rise to the debt. Such situations have prompted one court to remark, "State court litigants lose by default for too many reasons having nothing to do with wrongful conduct, including simple inability to afford to respond or to comply with discovery requests." *Stokes v. Vierra (In re Vierra)*, 173 B.R. 417, 418 (Bankr.N.D.Cal.1994), *rev'd on other grounds*, 185 B.R. 341 (N.D.Cal.1995). In contrast, under the State Law Test, a debtor, whether impecunious or not, who files bankruptcy the day *before* he is required to file an answer to the plaintiff's complaint in state court will be entitled to try dischargeability issues in the bankruptcy court and will be unaffected by a judgment entered in the state court proceeding. Similarly, a debtor, whether impecunious or not, who files bankruptcy after a motion for default judgment is filed in state court but the day before a default judgment is actually rendered by the state court may be entitled to try dischargeability issues in the bankruptcy court and may be unaffected by a judgment entered in the state court proceeding. Further, a debtor, whether impecunious or not, who files bankruptcy after entry of default but before a hearing on damages before the state court, may be entitled to try dischargeability issues in the bankruptcy court and may be unaffected by a judgment entered in the state court proceeding.

On the other hand, an impoverished debtor, who is unable to afford to defend in state court, who files bankruptcy the day after a default judgment is rendered by the state court, will be foreclosed from defending against a nondischargeability complaint based on the same debt in the bankruptcy court, and the bankruptcy court will be prevented from making the congressionally envisioned inquiry into the facts which gave rise to the allegedly nondischargeable debt.

Despite the efforts of the Supreme Court in *Brown*, in the above situations, discharge-

**38.** *Harris v. Byard (In re Byard)*, 47 B.R. 700, 702 (Bankr.M.D.Tenn.1985).

ability would hinge entirely on the vagrancies of state law and the timing of the filing of a bankruptcy petition, rather than on actual findings of facts based on competent testimony and proof. Despite the efforts of Congress in regard to the 1970 amendments, under the state law approach, dischargeability issues would be decided by state courts, according to state law principles, without regard to a debtor's ability to defend himself against a state court action. Both results are results that both the Supreme Court and Congress sought to avoid.

## C. The Pending Case: Lack of Support in the State Court Judgment Precludes Application of Collateral Estoppel

Notwithstanding that the plaintiffs' motion is due to be denied because they failed to satisfy both the General Federal Rule and the State Law Test, the plaintiffs motion is due to be denied for at least two other reasons.

### 1. Participation by the Debtor

The plaintiffs contend that the case of *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir.1995) fully decides this case. This Court disagrees in part because its holding in the instant case is limited to simple default judgments and similar situations characterized by minimal participation by a debtor in a state court proceeding or, at least, no bad faith participation by a debtor in a state court proceeding. Simple default judgments are distinguishable from penalty default judgments, the type of default in Bush, rendered for purposeful evasion of service, refusal to participate in discovery, and willful failure to appear for trial. Because a great deal of neither the state court's resources nor the plaintiff's resources are expended in a simple default situation, the interest in having issues fully passed upon by a competent tribunal outweighs the interests in conserving judicial resources and avoiding undue burden on a plaintiff posed by multiple lawsuits involving the same issues. However, in the penalty default situation, if the interest in having the issues fully determined is actually thwarted by the defendant's own contumacy, application of collateral estoppel to the resulting judgment

when a subsequent proceeding is brought on the same issues is not unfair.

In *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir.1995), the Court of Appeals for the Eleventh Circuit addressed a situation in which circumstances weighed in favor of according issue preclusion to a state court penalty default. In *Bush,* the Eleventh Circuit recognized the general rule that a default judgment entered in a nonbankruptcy civil action does not collaterally estop a debtor from litigating issues involved in a nondischargeability action brought in the bankruptcy court, but recognized an exception to the general rule based on a debtor's active defense of the civil action and abuse of process in the nonbankruptcy forum prior to entry of the default judgment. The Court's opinion stated:

> Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action.

62 F.3d at 1325.

In *Bush,* the court deviated from the general rule, in part, because of the debtor extensively participated in the nonbankruptcy action. More important to the decision, however, was the fact that the debtor in that case willfully obstructed the nonbankruptcy proceedings prior to the default judgment being rendered and that the default judgment was rendered as a result of that obstruction. As indicated by the following excerpt from the court's opinion:

> Bush actively participated in the prior action over an extended period of time. Subsequently, he engaged in dilatory and deliberately obstructive conduct, and a default judgment, based upon fraud, was entered as a sanction against him. He now attempts, in this bankruptcy proceeding, to avoid Section 523 by denying the fraud. Such abuse of the judicial process must not be rewarded by a blind application of the

general rule denying collateral estoppel effect to a default judgment.

62 F.3d at 1324.

To what extent active participation *alone* or abuse of process *alone,* and what extent of active participation *alone* or abuse of process *alone* may take a case outside of the general rule, are not issues that were addressed in *Bush. Bush* involved a combination of extensive participation and abuse of process in the nonbankruptcy proceeding and therefore stands for the proposition that a combination of those factors may, if the participation was extensive enough and the abuse was egregious enough, require a bankruptcy court to give collateral estoppel effect to the nonbankruptcy default judgment. Whether a debtor's participation was extensive enough and abuse was egregious enough in any given situation are issues of fact, left to "the sound discretion of the trial court." 62 F.3d at 1325 n. 8.

The degree of participation in the state court by the debtor in this case did not even remotely rise to the level of that of the debtor in *Bush.* In *Bush,* the debtor's participation in the nonbankruptcy forum was described as follows:

> He actively participated in the adversary process for almost a year. He was represented by counsel. He answered the complaint. He filed a counterclaim. He filed discovery requests. After undertaking to represent himself, he began to refuse to cooperate in discovery. He refused to produce documents despite repeated requests. He refused to appear at his properly noticed deposition. He did respond to Beatty Balfour Beatty's Motion for Sanctions claiming he was out of state on the scheduled day. At the district court's properly noticed pre-trial conference, Bush failed to appear. As in Daily, the default judgment for fraud against Bush was entered pursuant to Rule 37 as a sanction for deliberate refusal to participate in discovery.

62 F.3d at 1324.

In the state court action involved here, the debtor answered the plaintiff's complaint, appeared at the initial hearing set for the plaintiff to prove damages, was granted a one month continuance of that hearing, and elected not to defend the case thereafter or to oppose the entry of a default judgment. Otherwise, the debtor did not participate in the lawsuit. No discovery requests, pleadings other than the complaint and answer, or motions other than the plaintiff's application for entry of default were filed by either party.

Furthermore, this Court finds that the debtor did not willfully impede, obstruct, or hinder the state court proceedings and was not guilty of any opprobrious conduct similar to that engaged in by the debtor in *Bush.* In *Bush,* the default judgment was entered by the nonbankruptcy court because the debtor refused to participate in discovery. In this case, the default was rendered by the state court simply because the debtor decided not to oppose the plaintiff's lawsuit.

Since the facts in this case are entirely distinguishable from the facts in *Bush,* the decision in *Bush* does not mandate or suggest deviation from the general rule in this case. The application of collateral estoppel based on the state court default judgment is therefore precluded.

On the other hand, this Court recognizes that no blanket rule can be formulated to cover every possible default judgment situation. The fact situations in which default judgments can be entered are simply too numerous and varied. As stated by the bankruptcy court in *Federal Trade Comm. v. Wright (In re Wright),* 187 B.R. 826 (Bankr. D.Conn.1995):

> The requirement that an issue be "actually litigated" to qualify for collateral estoppel does not imply that preclusion is available only for those issues established after a full evidentiary and adversarial trial. Such a rule would undermine the efficacy of the doctrine since only a relatively small percentage of judicial matters are resolved by full trial process. By the same token, there are certain types of dispositions short of full adversarial trial which should not produce preclusive effect in subsequent litigation, either because such effect would not serve the fundamental purposes of the collateral estoppel doctrine or produce an inequitable result. "The

interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before." Restatement (Second) of Judgments § 27, cmt. e.

The possible disposition permutations in a given case are numerous, and each such disposition is attended by a different level of adversarial "litigation". As a result, a court must resist simply applying a blanket rule based on the appellation assigned the disposition—e.g. default judgment, summary judgment, etc.—by the prior court. Rather, each disposition should be addressed on a case-by-case basis.

*Federal Trade Comm. v. Wright (In re Wright),* 187 B.R. at 833.

## 2. State Court Evidence

■ Whether state or federal law is applied to determine the issue preclusive effect of a state court default judgment, two threshold requirements must be met before the judgment may, in any case, be accorded collateral estoppel effect in a bankruptcy dischargeability proceeding. These are: (1) the state court judgment must be supported by at least some evidence that can be discerned from the record of the state court proceedings; and (2) the state court judgment, either alone or in conjunction with the rest of the state court record, must indicate that the court actually considered the evidence presented and, based on that evidence, that the state court found facts that prove a nondischargeable debt under 11 U.S.C. § 523. *Dennis v. Dennis (In re Dennis),* 25 F.3d 274, 278 (5th Cir.1994)(state court judgment); *Patino's, Inc. v. Poston (In re Poston),* 735 F.2d 866, 869 (5th Cir.1984)(state court judgment) *cert. denied,* 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 700 (1984); *Harold v. Simpson & Co. v. Shuler (In re Shuler),* 722 F.2d 1253 (5th Cir.1984)(state court judgment) *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Right Up Your Alley, Inc. v. Dorand,* 1996 WL 46715 *2 (E.D.La., Feb. 6, 1996)(state court judgment); *Pancake v. Reliance Ins. Co. (In re Pancake),* 199 B.R. 350, 355 (N.D.Tex.1996)(state court judgment); *Stokes v. Vierra,* 185 B.R. 341,

344 (N.D.Cal.1995)(state court judgment); *Meyer v. Asbury (In re Asbury),* 195 B.R. 412, 417 (Bankr.E.D.Mo.1996)(state court judgment); *Ford v. Ford (In re Ford),* 191 B.R. 233, 237 (Bankr.M.D.Fla.1995)(state court judgment); *Sims v. Morris (In re Morris),* 185 B.R. 939, 944 (Bankr.N.D.Ga. 1994)(state court judgment); *Frantz v. Schuster (In re Schuster),* 171 B.R. 807, 812 (Bankr.E.D.Mich.1994)(state court judgment); *Burgess v. Martin (In re Martin),* 171 B.R. 395, 398 (Bankr.N.D.Ala.1994)(state court judgment); *Norrell Health Care, Inc. v. Clayton (In re Clayton),* 168 B.R. 700, 708–709 (Bankr.N.D.Cal.1994)(arbitration award); *Union Nat'l Bank of Marseilles v. Leigh (In re Leigh),* 165 B.R. 203, 218 (Bankr.N.D.Ill.1994)(state court judgment); *Penn–America Ins. Co. v. Himowitz (In re Himowitz),* 162 B.R. 109, 112–113 (Bankr.D.N.J.1993)(federal court judgment); *In re Wien,* 1993 WL 266897 *7 (Bankr. N.D.Ill., June 30, 1993)(federal court judgment); *Hall v. Mady (In re Mady),* 159 B.R. 487, 490 (Bankr.N.D.Ohio 1993)(federal court judgment); *Crain v. Limbaugh (In re Limbaugh),* 155 B.R. 952, 958–959 (Bankr. N.D.Tex.1993)(state court judgment); *Haase v. McClain (In re McClain),* 138 B.R. 294, 297 (Bankr.M.D.Fla.1992)(state court judgment); *Lopez v. Martinez (In re Martinez),* 110 B.R. 353, 355 (Bankr.N.D.Ill.1990)(state court judgment); *Armstrong v. Glendenning (In re Glendenning),* 107 B.R. 136, 138 (Bankr.N.D.Ohio 1989)(state court judgment); *Graham v. Billings (In re Billings),* 94 B.R. 803, 809 (Bankr.E.D.N.Y.1989)(federal court judgment); *Pesak v. Weitzel (In re Weitzel),* 72 B.R. 253, 257 (Bankr.N.D.Ohio 1987)(state court judgment); *Lingenfelter v. Canon (In re Canon),* 43 B.R. 733, 734–735 (Bankr.W.D.Mo.1984)(state court judgment); *Leibenhaut v. Ackerman (In re Ackerman),* 16 B.R. 640, 645 (Bankr.D.N.J.1981)(state court judgment); *MA & M Inc. v. Supple (In re Supple),* 14 B.R. 898, 904 (Bankr.D.Conn. 1981)(state court judgment); *Long v. Trewyn (In re Trewyn),* 12 B.R. 543, 546 (Bankr. W.D.Wis.1981)(state court judgment).

In other words, a default judgment must have factual and evidentiary bases in order to form the basis of a determination of non-

dischargeability based solely on the judgment. This principle is rooted in two decisions of the Court of Appeals for the Fifth Circuit. The first case is: *Harold v. Simpson & Co. v. Shuler (In re Shuler),* 722 F.2d 1253 (5th Cir.1984) *cert. denied,* 469 U.S. 1086, 105 S.Ct. 590, 83 L.Ed.2d 700 (1984). In *Shuler,* the plaintiff sought a determination of nondischargeability based on a particular state court judgment, rendered by default against the debtor. The plaintiff contended that the judgment should have been accorded collateral estoppel effect by the bankruptcy court. The state court complaint filed by the plaintiff alleged:

> As shown in the attached statement of account, Plaintiff sold to Defendant goods, services, wares, and merchandise, which Defendant accepted and thereby became bound to pay to Plaintiff the stated price thereof, which is a reasonable and fair, usual and customary price. 3. Debt. The balance due and owing to Plaintiff on said account is $568.75. Although often requested, Defendant has failed and refused to pay the amount due. This debt is for obtaining the items specified by false pretenses, both inclusive and exclusive of representations of financial condition.

722 F.2d at 1257 n. 4. The only evidence produced in the state court to support the request for default was the plaintiff's complaint and an affidavit verifying invoices for the services that made the basis of the complaint. The judgment stated:

> The Court finding that Defendant, though duly cited to appear and answer herein, has wholly failed to appear and answer herein, that appearance day for the Defendant has passed, that Plaintiff's cause of action is based upon a liquidated demand and debt for obtaining by false pretenses the items furnished by Plaintiff, and that Plaintiff is entitled to judgment as prayed for: It is, accordingly, ORDERED, ADJUDGED and DECREED that Plaintiff, *Harold v. Simpson & Company,* have and recover of and from Defendant, Ronald W. Shuler, doing business as Bill Shuler Marketing Co., judgment in the sum of $808.52, together with interest thereon from date of judgment at the rate of nine percent (9%) per annum until paid, and for

> all costs of court in this behalf expended, for all of which let execution issue.

*Id.* at 1258 n. 7.

The bankruptcy court ruled that the default judgment did not collaterally estop the debtor from litigating the dischargeability of the underlying debt in bankruptcy. The Court of Appeals for the Fifth Circuit affirmed the ruling of the bankruptcy court because the state court's determination of fraud was not supported by any factual findings or facts which could be discerned from the state court record. Writing for the court, Judge Albert Tate stated:

> [T]he judgment in the present case did not contain detailed facts sufficient as findings to meet the federal test of nondischargeability; it contained merely a conclusory statement that the plaintiff was entitled to judgment on a false-pretense cause of action. Nor, on examining the pleadings and the attached affidavit—the judgment, the entire record of the state proceedings—, are any facts discernible that show the specific false-pretense conduct, by which the federal bankruptcy court might determine the creditor's claim of nondischargeability, measured by federal bankruptcy standards. If only for these reasons, the bankruptcy court—unable to discern from the record the subsidiary facts upon which the false-pretense allegation was made—properly refused to accord collateral estoppel effect to the conclusory false-pretense "determination" in the state court judgment.

*Id.* at 1258–1259 (footnote and internal parentheticals omitted).

The second case is *Patino's, Inc. v. Poston (In re Poston),* 735 F.2d 866, 869 (5th Cir. 1984) *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). In *Poston,* a creditor asked the bankruptcy court to give collateral estoppel effect to a state court default judgment in a dischargeability proceeding. In support of its request, the plaintiff provided the bankruptcy court with certified copies of the pleadings filed in the state court and of the state court judgment. The plaintiff's state court complaint alleged:

Although proper demands for payment have been made, Defendants have failed to pay the account balance, due in the amount of $3,149.25. By reason of their failure to comply with various legal requirements pertaining to corporations, the individual Defendants have become individually liable on this debt. The business of the Defendants was also conducted as a partnership at the time of incurrence of this debt and each individual Defendant is liable as a partner. The indebtedness herein sued upon is also for defalcation while acting in a fiduciary capacity. Defendants also represented that they were solvent and able to pay for the goods as the debt came due when they purchased the same on open account. In fact, Defendants and each of them were insolvent at the time of ordering and at the time of receiving the goods, and had no real purpose, intention or hope of making payment on the account.

735 F.2d at 869 n. 2. The state court judgment stated:

> It appearing to the Court that Defendants Larry Poston and Robert Lee Allman, though duly cited to appear and answer herein, have wholly failed to appear and answer herein, that appearance day for the Defendants has passed, that Plaintiff is entitled to judgment by default, that the allegations of fact contained in Plaintiff's Original Petition should be taken as established, and the Court having heard evidence and reviewed and considered the contents of the case file, and having found that the indebtedness sued upon and made the basis of this judgment was incurred by obtaining property by false representations and actual fraud other than a statement respecting financial condition, and also by fraud and defalcation while acting in a fiduciary capacity, done by Defendants jointly and severally: It is ORDERED, ADJUDGED and DECREED that Plaintiff, Patinos, Inc. have and recover of and from Defendants, Larry Poston and Robert Lee Allman, jointly and severally, judgment in the total sum of $5,746.88, which includes Plaintiff's principal claim, interest to date, exemplary damages and attorney's fees, together with interest thereon from date of judgment at the rate of nine per-

> cent (9%) per annum until paid, and for all costs of court in this behalf expended, for all of which let execution issue.

*Id.* at 868–869.

The bankruptcy court ruled that the default judgment had no collateral estoppel effect in the dischargeability proceeding because it contained no factual findings to support either the conclusory allegations contained in the plaintiff's complaint or the conclusory findings of fraud contained in the judgment. The Court of Appeals for the Fifth Circuit, relying on *Shuler*, affirmed the bankruptcy court, because the facts upon which the default judgment were based, if any, could not be discerned from the record of the state court proceedings. Writing for the court, Judge Albert Tate stated:

> Without subsidiary facts in the state court record from which the bankruptcy court could discern the specific basis for the false-pretense conduct determination recited by the state court in its judgment, the bankruptcy court properly refused collateral estoppel effect to the state court default judgment and was "not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of [the] debt."

*Id.* at 870 (*quoting Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979)). The court declined to rule on the general question of whether a default judgment may be accorded collateral estoppel effect. Judge Tate wrote, "Having determined as a threshold matter that the state proceedings here cannot factually be accorded collateral estoppel effect, the bankruptcy court did not reach, nor do we, the further issue of whether a default judgment meets the 'actually litigated' test for collateral estoppel for bankruptcy dischargeability determinations." *Id.* at 870 n. 3.

In *Dennis v. Dennis (In re Dennis),* 25 F.3d 274 (5th Cir.1994) the court reiterated the threshold "factual basis" requirement for a judgment to be accorded collateral estoppel effect in a bankruptcy dischargeability proceeding. In that case, the debtor, as part of a divorce settlement, agreed to pay income

taxes on military retirement benefits awarded to his former spouse. The debtor did not pay the income taxes and was sued by his former wife in state court for breach of this agreement. In her state court complaint, the plaintiff quoted her divorce decree which specifically provided that the agreement made the basis of the decree was "part of the division of community property between the parties" and that it should "not constitute or be interpreted to be any form of spousal support, alimony, or child support." 25 F.3d at 276. Based on that language from the divorce decree, the state court found that the debtor's agreement to pay the taxes "was part of the division of community property between the parties and did not constitute nor should it be interpreted to be any form of spousal support, alimony or child support," *Id.* at 277. The state court held the debtor liable for the taxes which the plaintiff had been required to pay as a result of the debtor's default under the agreement and directed him to pay the taxes on the benefits which might accrue in the future. The debtor filed bankruptcy in an effort to have his past and future obligation to pay taxes on the benefits discharged. He argued that the bankruptcy court was collaterally estopped by the state court judgment from finding that his obligation to pay taxes on the benefits was alimony or support. The bankruptcy court held that it was not precluded by the state court judgment from determining the true nature of the obligation. The Court of Appeals for the Fifth Circuit affirmed on the basis that since the state court had made no subsidiary findings of fact to support the conclusory statements in the judgment which referred to the debtor's obligations as a property division and not spousal support, alimony or child support, the bankruptcy court was not precluded from determining the true nature of those obligations. Writing for the court, Judge Samuel D. Johnson stated:

> [I]n only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues. *Collateral estoppel applies in bankruptcy courts only if, inter alia, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue and the facts supporting the court's findings are discernible from that court's record.* In re Davis, 3 F.3d 113, 115 (5th Cir.1993); *In re Shuler,* 722 F.2d at 1256. See *In re Comer,* 723 F.2d 737 (9th Cir.1984) (ruling that bankruptcy courts should not rely solely on state court judgments when determining the true nature of a debt for dischargeability purposes if so doing would prevent the bankruptcy courts from exercising their exclusive jurisdiction to determine whether the debt is dischargeable); see also *Browning v. Navarro,* 887 F.2d 553, 561 (5th Cir.1989) (providing that although the doctrine of res judicata is generally applicable to bankruptcy courts, the contours of the doctrine are "different for bankruptcy courts ... because tasks which have been delegated to [bankruptcy courts] by Congress may not be interfered with by the decisions of other courts.... [B]ankruptcy courts have a job to do and sometimes they must ignore res judicata in order to carry out Congress' mandate").

25 F.3d at 279 (emphasis added).

Many courts have followed the lead of the Court of Appeals for the Fifth Circuit. These include many that have specifically examined the issue of the collateral estoppel effect of default judgments under *Marrese* and state law. *Right Up Your Alley, Inc. v. Dorand,* 1996 WL 46715 *2 (E.D.La., Feb.6, 1996)(state court judgment); *Pancake v. Reliance Ins. Co. (In re Pancake),* 199 B.R. 350, 355 (N.D.Tex.1996)(state court judgment); *Stokes v. Vierra,* 185 B.R. 341, 344 (N.D.Cal. 1995)(state court judgment); *Meyer v. Asbury (In re Asbury),* 195 B.R. 412, 417 (Bankr.E.D.Mo.1996)(state court judgment); *Ford v. Ford (In re Ford),* 191 B.R. 233, 237 (Bankr.M.D.Fla.1995)(state court judgment); *Sims v. Morris (In re Morris),* 185 B.R. 939, 944 (Bankr.N.D.Ga.1994)(state court judgment); *Frantz v. Schuster (In re Schuster),* 171 B.R. 807, 812 (Bankr.E.D.Mich. 1994)(state court judgment); *Union Nat'l Bank of Marseilles v. Leigh (In re Leigh),*

165 B.R. 203, 218 (Bankr.N.D.Ill.1994)(state court judgment); *Crain v. Limbaugh (In re Limbaugh)*, 155 B.R. 952, 958–959 (Bankr. N.D.Tex.1993)(state court judgment).[39] And in several of the cited cases, the courts specifically determined, under *Marrese*, that applicable state law would, if the threshold requirements had been met, have required them to accord collateral estoppel to the default judgments involved in those cases. *Right Up Your Alley, Inc. v. Dorand*, 1996 WL 46715 *2 (E.D.La., Feb. 6, 1996); *Ford v. Ford (In re Ford)*, 191 B.R. 233, 237 (Bankr.M.D.Fla.1995)(state court judgment); *Sims v. Morris (In re Morris)*, 185 B.R. 939 (Bankr.N.D.Ga.1994); *Frantz v. Schuster (In re Schuster)*, 171 B.R. 807 (Bankr.E.D.Mich. 1994).

In the instant case, the judgment consists of a stamped form judgment on the state court docket sheet. The names of the defendants and the amount of the judgment are written in pen in blank spaces provided for that information on the form. In its entirety, the judgment reads:

> Upon motion of the plaintiff, supported by affidavit, judgment by default is rendered in favor of plaintiff and against the defendant(s) *Wald Construction Co.. Inc. and Michael Wald* with leave to prove damages. *within 30 days.*

Judgment notation dated January 5, 1994 in Civil Action No. CV 93–008885–00, in the Circuit Civil Court of Jefferson County, Alabama (handwritten portions underlined). A facsimile of the state court judge's signature is a part of the form stamped judgment.

In compliance with the judgment notation, the plaintiffs filed an affidavit to prove damages. After the plaintiffs filed their affidavit, another form judgment was stamped onto the state court docket sheet. The second stamped judgment notation reads as follows:

> Upon motion of the plaintiff, supported by affidavit, judgment by default is rendered

---

39. This line of cases seems, at first glance, enigmatic, since, if state law deems a default judgment to satisfy the "actually litigated" test, *Marrese*, under the reasoning espoused by those courts which have applied that case to bankruptcy dischargeability proceedings, would seem to compel acceptance of the judgment on its face, assuming either the judgment by its terms or in conjunction with pleadings filed in the state court, establishes the existence of a nondischargeability debt vel non. Should further inquiry into the "actually litigated" nature of the judgment be foreclosed by the fact of the judgment, assuming the appropriate dischargeability issues were raised by the pleadings and resolved by the judgment?

The "findings of fact" threshold requirement for default judgments, may be, in essence, a modification or limitation of the full faith and credit requirement of section 1738. As stated by the Court of Appeals for the Fifth Circuit in *Shuler:*

> Simpson also contends that the bankruptcy court failed to give "full faith and credit" to the judgment of the state court as required by 28 U.S.C. § 1738, which provides in part that state judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the Courts of such State." The full faith and credit due a state court judgment is of course manifested by the res judicata or collateral estoppel effect accorded to that judgment. See *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). *Where. as in bankruptcy, the res judicata or collateral estoppel effect of state court judgments has been limited by competing federal interests. see Brown v. Felsen, supra, 442 U.S. at 136–37, 99 S.Ct. at 2211–12, the full faith and credit owing to the state court judgment may be correspondingly limited.* Since the courts below properly assessed the collateral estoppel effect of the state court judgment in the present federal bankruptcy case, the full faith and credit principles of § 1738 have not been violated.

722 F.2d at 1258 n. 10 (emphasis added).

*Shuler* appears to have recognized a federal bankruptcy dischargeability limitation on full faith and credit. "As part of the *'federal test'*, bankruptcy courts in this District [where Shuler is controlling precedent] are required to examine the judgment rendered in the prior proceeding, together with the subsidiary facts actually litigated and necessarily decided, to determine whether the record contained sufficiently detailed facts and findings to supply each of the elements of a § 523(a) claim." *Crain v. Limbaugh (In re Limbaugh)*, 155 B.R. 952, 958–959 (Bankr.N.D.Tex.1993)(emphasis and material in brackets added).

Even without imposing a limitation on full faith and credit, the requirement that a nonbankruptcy default judgment have an identifiable basis in evidence discernable from the state court record or be based on express findings of subsidiary fact is justified by simple recognition of the principle that res judicata deals with the effect of judgments while collateral estoppel deals with particular facts expressly determined. As is discussed below, if the state court has found no facts, collateral estoppel is inapplicable, even if res judicata is.

in favor of plaintiff and against the defendant *Wald Construction Company. Inc. and Michael Wald* and damages are fixed and assessed in the amount of *forty nine thousand nine and 77/100* Dollars ($ *49009.77* ) and all costs with/without waiver as to personal exemptions.

Judgment notation dated April 6, 1994 in Civil Action No. CV 93–008885–00, in the Circuit Civil Court of Jefferson County, Alabama (handwritten portions underlined). A facsimile of the state court judge's signature is a part of the form stamped judgment.

Neither judgment notation contains any factual findings, either specific or conclusory. "The judgement simply does not disclose the controlling facts or the exact issues decided." *Sims v. Morris (In re Morris)*, 185 B.R. 939, 944 (Bankr.N.D.Ga.1994). Therefore, even if this Court were of the opinion that *Marrese* controlled the analysis of this case, which it is not, and even if Alabama law would give collateral estoppel effect to a default judgment, which it does not, collateral estoppel could not be accorded to the specific judgment involved in this case. "[I]n order for this Court to grant full faith and credit to a 'foreign' judgement, especially in an area as delicate as nondischargeability in which this Court has sole jurisdiction, detailed findings of fact are virtually a necessity." *Norrell Health Care, Inc. v. Clayton (In re Clayton)*, 168 B.R. 700, 708–709 (Bankr.N.D.Cal.1994).

The conclusory descriptions of the debtor's alleged fraudulent activity contained in the complaint filed by the plaintiffs in the state court and the affidavit filed by them in support of damages are of no assistance to them in this case. In its judgment entry, the state court did not specifically adopt or refer to any of the statements contained in either the complaint or the affidavit. No reference to or evaluation of those statements was in fact necessary, since the debtor's liability was conclusively established by the default judgment entered for his failure to timely appear. The state court merely accepted the affidavit at face value for the purpose that it was filed, to establish damages, and elected not to make any findings, based either on the complaint or the affidavit or, for that matter, any other evidence. This Court cannot speculate on the factual basis of the state court judgment, as "some factual predicate is required before a judgment can have preclusive effect in a bankruptcy dischargeability proceeding." *Meyer v. Asbury (In re Asbury)*, 195 B.R. 412, 417 (Bankr.E.D.Mo.1996).

In their state court complaint, the plaintiffs in the instant case allege (1) that subsequent to entering into a contract with the debtor to build a house for them, the debtor, either fraudulently or mistakenly, misrepresented the date on which the house would be completed, and (2) that the debtor obtained draws against the plaintiffs' construction line of credit by misrepresenting, either fraudulently or mistakenly, that the money thereby obtained would be used to pay for costs already incurred by him in constructing the plaintiffs' house. In their affidavit, the plaintiffs reasserted the same purported representations, but *dropped the "mistakenly" alternative.*

■ A default judgment based on the blind acceptance of conclusory allegations of an adversary, without consideration of supportive facts or actual evidence, may not, regardless of state law, be given collateral estoppel effect in a bankruptcy dischargeability proceeding. "For the 'actually litigated' prong to be met, the cases evince a requirement that some evidence underlying the state court judgment serve as the basis for the application of collateral estoppel in a subsequent dischargeability proceeding." *Pancake v. Reliance Ins. Co. (In re Pancake)*, 199 B.R. 350, 355 (N.D.Tex.1996). "The court must also inquire as to whether the state trial court had competent testimony before it upon which to grant a default judgment." *Frantz v. Schuster (In re Schuster)*, 171 B.R. 807, 812 (Bankr.E.D.Mich.1994).

The statements made in the complaint and affidavit are conclusory and do not describe subsidiary facts upon which the state court could have made an independent determination that the debtor had indeed been guilty of actual fraud or which might establish a nondischargeable debt under 11 U.S.C. § 523. This Court concludes as has another, that, "Although plaintiffs recovered in the state court on theories similar to that set out in the statute, it was by default and this Court

is unable to conclude that the judgment in state court was based on the findings of facts that would result in the same conclusion here as a consequence of collateral estoppel or res judicata. This Court, therefore, is obligated to make its own findings and conclusions." *Lingenfelter v. Canon (In re Canon)*, 43 B.R. 733, 734–735 (Bankr.W.D.Mo.1984).

■ Therefore, even had the state court specifically adopted and included in the judgment the conclusory allegations made in the plaintiffs' complaint and affidavit, the debtor would still not be collaterally estopped from litigating the dischargeability of the debt, since this Court would still be unable to discern from the state court record the subsidiary facts upon which the plaintiffs allegations of fraud were made. As stated by the court in *Penn–America Ins. Co. v. Himowitz (In re Himowitz,)* 162 B.R. 109 (Bankr. D.N.J.1993):

> This court cannot merely accept the stated legal conclusions of the prior court at face value.

> . . . . .

> Even assuming, however, that such evidence had been provided, this court is obligated by Ross to make its own determinations as to whether the facts which were determined by the District Court add up to fraud or defalcation in a fiduciary capacity within the meaning of Code section 523(a)(4). *If the bankruptcy court is obligated to accept such statements by other courts of their legal conclusions at face value, the distinction between claim preclusion and issue preclusion will be obliterated and the bankruptcy court will not be exercising its own judgment as to the ultimate issue of dischargeability.*

162 B.R. at 112–113 (emphasis added).

The basis for the requirement that a non-bankruptcy default judgment have an identifiable basis in evidence or be based on express findings of subsidiary facts lies in the simple principle that res judicata deals with the effect of judgments while collateral estoppel deals with particular facts expressly determined. In a bankruptcy dischargeability proceeding, the bankruptcy court must make findings of fact. If a state court has already found subsidiary facts, the bankruptcy court may be obligated to accept those findings, without taking additional evidence. "[C]ollateral estoppel can be applied to a state court judgment to enable the Court to reach conclusions about facts that would be considered as evidence of nondischargeability." *Sims v. Morris (In re Morris)*, 185 B.R. 939, 944 (Bankr.N.D.Ga.1994). However, if the state court's so-called "findings" are, in reality, merely conclusions, the bankruptcy court is not obligated to accept those conclusions and must take additional evidence on the issues that were before the state court. Therein lies the salient feature which distinguishes collateral estoppel from res judicata: "Establishing a fact and giving a specific effect to it by judgment are quite distinct." *Becher v. Contoure Lab., Inc.*, 279 U.S. 388, 391, 49 S.Ct. 356, 357, 73 L.Ed. 752 (1929). The bankruptcy court must give collateral estoppel effect only to actual and express findings of subsidiary facts, not to factual conclusions the basis of which cannot be determined from the state court judgment, since the ultimate conclusion to be reached from those facts, the dischargeability or nondischargeability of the particular debt in question, must be decided by the bankruptcy court and may not be decided by the state court. As the Court of Appeals for the Fifth Circuit said in *Dennis v. Dennis (In re Dennis)*, 25 F.3d at 279,

> However, federal bankruptcy law, not Texas law, governs here. The bankruptcy court had neither the option nor the authority to apply state law in the case sub judice. That court was instead required to make findings of fact and conclusions of law in accord with federal bankruptcy law—and that is exactly what it did.

## IV. Conclusion

■ Clearly, collateral estoppel has application in dischargeability litigation, but only when issues identical to dischargeability issues have been actually adjudicated on proper proof submitted in an adversarial context, as opposed to adjudication by default. "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those

of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Brown*, 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10. In dischargeability matters, the collateral estoppel element of "actual litigation" is a very real, and not merely a technical requirement.

Bankruptcy courts must jealously guard the debtor's right to a discharge which, in the final analysis, is the primary purpose of bankruptcy. That purpose is defeated if a determination of dischargeability can be made without either the state court or the bankruptcy court making an informed judgment regarding the merits of a case based on evidence presented in an adversarial setting. A rule which accords collateral estoppel effect to a state court simple default judgment, without regard to the facts underlying the cause of action in the state court lawsuit, or the extent and nature of the debtor's participation in the state court case, or thought of whether the debtor is actually guilty of the conduct alleged in the state court complaint, is simply unfair. It is unwarranted by any policy considerations behind issue preclusion in general and completely usurps the role of the bankruptcy court in making dischargeability determinations.

In the instant case the movants cannot prevail on their *Renewed Motion for Summary Judgment* because they have not proven that they are entitled to judgment as a matter of law. 1. They cannot prove that the matter before the state court should be given preclusive effect in this Court; 2. The General Federal Rule precludes collateral estoppel effect where issues have not been actually litigated in the prior proceeding; 3. Alabama law does not afford collateral estoppel effect to default judgments; 4. The debtor did not sufficiently participate in the state court case for this Court to consider the default judgment a penalty default judgment; and 5. There is no evidence in the state court judgment to support the default judgment. Consequently the movants have not satisfied

their summary judgment burden and their motion is due to be denied.[40]

---

**40.** In reviewing this motion for summary judgment, this Court has followed the criteria established by the Court of Appeals for the Eleventh Circuit in *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (1 1th Cir.1993). In application of that criteria, the Court finds that the plaintiffs failed to meet their burden under Fed.R.Civ.P. 56(c).